# United States Court of Appeals for the Federal Circuit

---

**ASHLEY FURNITURE INDUSTRIES, INC.,**
*Plaintiff-Appellant,*

v.

**UNITED STATES**
*Defendant-Appellee,*

AND

**UNITED STATES INTERNATIONAL TRADE COMMISSION,**
*Defendant-Appellee,*

AND

**AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE, KINCAID FURNITURE CO., INC., L. & J.G. STICKLEY, INC., SANDBERG FURNITURE MANUFACTURING COMPANY, INC., STANLEY FURNITURE COMPANY, INC., T. COPELAND AND SONS, INC., AND VAUGHAN-BASSETT FURNITURE COMPANY, INC.,**
*Defendants-Appellees.*

---

2012-1196

---

Appeal from the United States Court of International Trade in No. 10-CV-0081, Judges Gregory W. Carman, Leo M. Gordon, and Timothy C. Stanceu.

- - - - - - - - - - - - - - - - - - - - - -

**ETHAN ALLEN GLOBAL, INC. AND ETHAN ALLEN OPERATIONS, INC.,**
*Plaintiffs-Appellants,*

**v.**

**UNITED STATES AND UNITED STATES CUSTOMS AND BORDER PROTECTION,**
*Defendants-Appellees,*

AND

**INTERNATIONAL TRADE COMMISSION,**
*Defendant-Appellee,*

AND

**KINCAID FURNITURE CO., INC., L. & J.G. STICKLEY, INC., SANDBERG FURNITURE MANUFACTURING COMPANY, INC., STANLEY FURNITURE COMPANY, INC., T. COPELAND AND SONS, INC., AND VAUGHAN-BASSETT FURNITURE COMPANY, INC.,**
*Defendants-Appellees.*

————————————

2012-1200

————————————

Appeal from the United States Court of International Trade in No. 08-CV-0302, Judges Gregory W. Carman, Leo M. Gordon, and Timothy C. Stanceu.

————————————

Decided: August 19, 2013

————————————

KEVIN RUSSELL, Goldstein & Russell, P.C., of Washington, DC, argued for plaintiff-appellant Ashley Furniture Industries, Inc., et al in appeal no. 2012-1196. With him on the brief were KRISTIN H. MOWRY, JEFFREY S. GRIMSON, JILL A. CRAMER, SUSAN LEHMAN BROOKS and SARAH M. WYSS, Mowry & Grimson, PLLC, of Washington, DC.

FRANKLIN E. WHITE, JR., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and JESSICA R. TOPLIN, Trial Attorney. Of counsel were COURTNEY SHEEHAN MCNAMARA, Trail Attorney.

PATRICK V. GALLAGHER, JR., Attorney, Office of General Counsel, United States International Trade Commission, of Washington, DC, argued of defendant-appellee United States International Trade Commission. With him on the brief were DOMINIC L. BIANCHI, Acting General Counsel, NEAL J. REYNOLDS, Assistant General Counsel for Litigation.

ASHLEY C. PARRISH, King & Spalding LLP, of Washington, DC, argued for defendants-appellees American Furniture Manufacturers Committee for Legal Trade, et al. With her on the brief were JOSEPH W. DORN and JEFFREY M. TELEP. Of counsel on the brief was RICHARD H. FALLON, of Cambridge, Massachusetts.

HERBERT C. SHELLEY, Steptoe & Johnson, LP, of Washington DC for amici curiae, SKF USA, Inc., et al. With him on the brief was MICHAEL T. GERSHBERG. Of counsel on the brief were JOHN M. GURLEY, NANCY A. NOONAN and DIANA DIMITRIUC-QUAIA, Arent Fox LLP, of Washington DC.

DAVID W. DEBRUIN, Jenner & Block, LLP, of Washington, DC, for amicus curiae Furniture Brands International, et al. With him on the brief was MATTHEW E. PRICE,

TERENCE P. STEWART, Stewart and Stewart of Washington, DC, for amici curiae Timken Company, et al. With him on the brief were GEERT DE PREST and PATRICK J. MCDONOUGH. Of counsel on the brief were ROY T. ENGLERT, JR., Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP, of Washington, DC.

———————————

CHRISTOPHER T. HANDMAN, Hogan Lovells US LLP, of Washington, DC, argued for plaintiffs-appellants Ethan Allen Global, Inc., et al., in appeal no. 2012-1200. With him on the brief were CRAIG A. LEWIS and JONATHAN T. STOEL.

FRANKLIN E. WHITE, JR., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States, et al. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and JESSICA R. TOPLIN, Trial Attorney. Of counsel was COURTNEY SHEEHAN MCNAMARA, Trial Attorney.

PATRICK V. GALLAGHER, JR., Attorney, Office of General Counsel, United States International Trade Commission, of Washington, DC, argued for defendant-appellee International Trade Commission. With him on the brief were DOMINIC L. BIANCHI, Acting General Counsel, NEAL J. REYNOLDS, Assistant General Counsel for Litigation, and GEOFFREY S. CARLSON, Attorney.

ASHLEY C. PARRISH, King & Spalding, LLP, of Washington, DC, argued for defendants-appellees Kincaid Furniture Co., Inc., et al. With her on the brief were JOSEPH W. DORN and JEFFREY M. TELEP. Of counsel on the brief was RICHARD H. FALLON, of Cambridge, Massachusetts.

HERBERT C. SHELLEY, Steptoe & Johnson, LP, of Washington, DC, for amici curiae SKF USA, Inc., et al. With him on the brief was MICHAEL T. GERSHBERG. Of counsel on the brief were JOHN M. GURLEY, NANCY A. NOONAN and DIANA DIMITRIUC-QUAIA, Arent Fox, LLP, of Washington, DC.

DAVID W. DEBRUIN, Jenner & Block, LLP, of Washington, DC, for amicus curiae Furniture Brands International, Inc., et al. With him on the brief was MATTHEW E. PRICE.

TERENCE P. STEWART, Stewart and Stewart of Washington, DC, for amici curiae Timken Company, et al. With him on the brief were GEERT DE PREST and PATRICK J. MCDONOUGH. Of counsel on the brief were ROY ENGLERT, JR., Robbins, Russell, Englert, Orseck, Untereiner and Sauber, LLP, of Washington, DC.

———————————

Before PROST, CLEVENGER, and MOORE, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* MOORE.

Dissenting opinion filed by *Circuit Judge* CLEVENGER.

MOORE, *Circuit Judge.*

Ashley Furniture, Inc., Ethan Allen Global, Inc., and Ethan Allen Operations, Inc. (Appellants) appeal from the decisions of the Court of International Trade (CIT) dismissing Appellants' complaints seeking compensation pursuant to the Continued Dumping and Subsidy Offset Act (the Byrd Amendment) for failure to state a claim for relief. Because the CIT correctly concluded that Appellants are not Affected Domestic Producers (ADPs) within the meaning of the Byrd Amendment and thus do not qualify for the requested relief, we *affirm.*

## BACKGROUND

Appellants are domestic producers of wooden bedroom furniture. In 2003, the Department of Commerce (Com-

merce) initiated an antidumping investigation of Chinese wooden bedroom furniture manufacturers pursuant to a petition filed by an association of U.S. furniture manufacturers and several labor unions. In parallel, the International Trade Commission (ITC) investigated whether the domestic industry had been materially injured by dumped imports from China. To aid in the investigation, the ITC distributed questionnaires to all known domestic wooden bedroom furniture producers, seeking sales data and other information. Producers are required by law to respond to the questionnaires, and the Appellants duly responded. One of the questions asked, simply, "Do you support or oppose the petition?" and gave respondents the choice to answer "Support," "Oppose," or "Take no position." Ashley answered "Oppose" and Ethan Allen answered "Take no position."

The ITC subsequently determined dumping and injury to the domestic industry and issued an antidumping duty order. Pursuant to the order, Commerce directed the U.S. Customs and Border Patrol (Customs) to collect duties on entries of Chinese wooden bedroom furniture. The ITC prepared a list of ADPs eligible under the Byrd Amendment to receive a share of the antidumping duties. *See* 19 U.S.C. § 1675c(a), (d)(1) (2000) (*repealed by* Deficit Reduction Act of 2005, Pub L. No. 109-171, § 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007)). The ITC did not include Appellants because it determined that they were not "interested part[ies] in support of the petition" and therefore not ADPs. *Id.* § 1675c(b)(1)(A); *see also id.* § 1675c(d)(1). Accordingly, Customs denied Byrd Amendment distributions to Appellants.

Appellants sued the ITC, Customs, and domestic producers who received Byrd Amendment funds in the CIT. Although the Byrd Amendment has long since been repealed, Appellants sought their share of the funds for the several fiscal years when it was still in effect. Appellants contended that they supported the petition within the meaning of the Byrd Amendment and, in the alternative, that the Byrd Amendment violated the First Amendment of the Constitution. The CIT dismissed both Appellants' complaints, holding that our decision in *SKF USA, Inc. v. U.S. Customs & Border Protection*, 556 F.3d

1337 (Fed. Cir. 2009), foreclosed their claims for relief. *Ashley Furniture Indus., Inc. v. United States*, 818 F. Supp. 2d 1355 (Ct. Int'l Trade 2012); *Ethan Allen Global, Inc. v. United States*, 816 F. Supp. 2d 1330 (Ct. Int'l Trade 2012).

This appeal followed. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

DISCUSSION

We review the CIT's dismissal for failure to state a claim *de novo*. *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1049 (Fed. Cir. 2012). "We review statutory interpretation by the CIT without deference. Constitutional interpretation is also a question of law, which we review *de novo*." *U.S. Shoe Corp. v. United States*, 296 F.3d 1378, 1381 (Fed. Cir. 2002) (citations omitted).

The CIT reasoned that *SKF*, where we held that the Byrd Amendment's petition support requirement is not facially unconstitutional, disposed of Appellants' facial First Amendment challenges. The CIT also rejected Appellants' as-applied challenges because it found that *SKF* was not distinguishable. The court explained that *SKF* made clear that the government did not violate the First Amendment when it rewarded only those producers who supported the petition and denied distributions to those who were opposed to or neutral to it. *Ashley Furniture*, 818 F. Supp. 2d at 1366; *Ethan Allen*, 816 F. Supp. 2d at 1337–38 (citing *SKF*, 556 F.3d at 1359). Finally, the CIT held that the plain language of the Byrd Amendment prevented Appellants from obtaining relief. *Ashley Furniture*, 818 F. Supp. 2d at 1361; *Ethan Allen*, 816 F. Supp. 2d at 1336.

Appellants argue that the CIT's dismissal of their complaints must be reversed under *PS Chez Sidney, L.L.C. v. U.S. International Trade Commission*, 684 F.3d 1374 (Fed. Cir. 2012), a case decided after the CIT's rulings at issue in these appeals. Appellants contend that they, like the producer in *Chez Sidney*, should be awarded Byrd Amendment distributions. Appellants acknowledge that the producer in *Chez Sidney* indicated support for a

petition in the preliminary questionnaire and answered "Take no position" in the final questionnaire. They contend that *Chez Sidney's* holding rests not on the producer's initial expression of support in the *preliminary* questionnaire, but on the fact that it filled out the *final* questionnaire and took no action to oppose the petition. Appellants argue that their conduct is closer to that of Chez Sidney than that of SKF because SKF took action in opposition to the petition that outweighed the assistance it provided by responding to the questionnaire. Ashley contends that even an "Oppose" answer supports the petition in the sense that it enables Customs to determine the extent of injury caused by dumping. Ethan Allen contends that it, like Chez Sidney, answered "Take no position" in the final questionnaire and should therefore qualify for a distribution. Appellants also contend that intervening Supreme Court cases have undermined *SKF*, rendering the Byrd Amendment unconstitutional on its face or at least as applied to them.

Appellees counter that allowing a domestic producer who marked "Oppose" or "Take no position" to qualify as a "supporter" of the petition would contravene the plain language of the statute. They contend that Appellants do not qualify for distributions because, even though they filled out the questionnaires, they failed to provide any statement of support for the petition. Appellees contend that *Chez Sidney* is distinguishable. They argue that answering "Oppose" or "Take no position" in the final questionnaire is not merely abstract expression, but a significant statement indicating that a producer does not wish an antidumping duty order to issue. Appellees contend that *Chez Sidney* could not—and did not— overrule *SKF*'s holding that parties "opposing (or not supporting)" the petition "should not be rewarded." *SKF*, 556 F.3d at 1359. They argue that the fact that Chez Sidney indicated support for the investigation in the preliminary questionnaire was critical to our decision in that case. Thus, Appellees contend that *Chez Sidney* supports the conclusion that a producer who never declared support for a petition does not qualify for a distribution.

With regard to Appellants' First Amendment challenges, Appellees contend that we are bound to follow *SKF*'s holding that the Byrd Amendment is constitutional. They contend that the Byrd Amendment does not discriminate on the basis of a viewpoint, but simply provides relief to producers who request it by indicating support for the antidumping petition. Appellees argue that *SKF* settled the First Amendment challenges to the Byrd Amendment, and contend that we cannot revisit those holdings.

We agree with Appellees that the CIT properly dismissed the Appellants' complaints. *SKF* resolved the facial First Amendment challenge presented in these cases. We are bound to follow this precedent and are not free to revisit the First Amendment arguments that were before the *SKF* panel. To the extent that Appellants argue that recent Supreme Court precedent overruled our *SKF* holding, we do not agree. We also reject the Appellants' as-applied First Amendment challenges because, as explained below, the government did not deny Byrd Amendment distributions to Appellants solely on the basis of abstract expression.

We note that the Byrd Amendment was repealed several years ago and the government informs us that only a small number of cases remain to be resolved. *SKF*, *Chez Sidney*, and the appeals before us provide three factual scenarios for evaluating the Byrd Amendment cases that remain. On one side is *SKF*, where the producer indicated opposition to the petition in a questionnaire and actively opposed the petition—and failed to qualify for a distribution. On the opposite side is *Chez Sidney*, where the producer indicated support for the petition through a questionnaire response and did not actively oppose the petition—and received a Byrd Amendment distribution. The appeals before us fall between these two extremes. Here, Appellants did not indicate support for the petition in a questionnaire and did not actively oppose the petition. We hold that Appellants have not supported the petition under the plain meaning of the Byrd Amendment.

It is not enough, as Appellants contend, merely to supply the answers to the questionnaires. Both SKF and Chez Sidney provided such answers, yet only one was held to be a supporter. The plain language of the statute requires "support of the petition" in order to obtain a distribution. 19 U.S.C. § 1675c(b)(1)(A). A producer meets that requirement when it "indicate[s] support . . . by letter or through questionnaire response." *Id.* § 1675c(d)(1). Appellants' arguments lead to the incongruous conclusion that a producer who indicates only opposition to the petition in questionnaires—the polar opposite of support—is nevertheless a supporter. The conclusion that a producer who indicates that it "takes no position" in a questionnaire is a supporter is also incongruous because such a producer has not "indicated support." Because Congress could not have intended the odd construction of the Byrd Amendment advocated by Appellants, we hold that a producer who never indicates support for the petition by letter or through questionnaire response cannot be an ADP. The language of this statute is straightforward. This interpretation is consistent with both *SKF* and *Chez Sidney*. No doubt a skilled advocate could pluck out-of-context statements from these cases to argue in a client's favor, but we must decide this case on its facts. We conclude that the domestic producers in these cases are not entitled to Byrd Amendment distributions.[1]

---

[1]    The dissent would find entitlement to a distribution based simply on filling out a questionnaire and not actively opposing the petition. Dissent at 6. But the Byrd Amendment does not say "not actively oppose"—it says the producer must "indicate support of the petition by letter or through questionnaire response." 19 U.S.C. § 1675c(d)(1). Neither of the Appellants here indicated support in any letter or through questionnaire response. The simple act of filling out the questionnaire is not an indication of support through questionnaire response.

This analysis is consistent with *SKF*, which explained that a producer's "bare statement that it was a supporter" is a necessary (though not a sufficient) condition to obtain ADP status. *SKF*, 556 F.3d at 1354 n.26. Chez Sidney provided such a statement, but Appellants did not. This is not a case about standalone abstract expression. Appellants submitted official questionnaires that could have prevented the ITC and Customs from "successfully enforc[ing] government policy." *SKF*, 556 F.3d at 1357. As *SKF* explained, the Byrd Amendment does not reward neutral or opposing parties because filling out the questionnaire without indicating support for the petition can contribute to the petition's defeat. *Id.* at 1357–59. Indeed, the ITC takes the level of support of the petition into account in its determination of material injury, and the petition cannot be considered as filed "on behalf of the industry" unless at least 25% of the domestic producers in the relevant industry sector indicate support. *See id.* at 1376–77 (citing 19 U.S.C. § 1673a(c)(4)(A)(i)-(ii)) (Linn, J., dissenting). While we recognize that this framework may create incentives for domestic producers to indicate support for a petition even when they may believe that an antidumping duty order is unwarranted, it is not our task to pass on Congress's wisdom in enacting the Byrd Amendment. We find nothing in *Chez Sidney* that precludes this conclusion. *Chez Sidney* repeatedly referred to the fact that the producer expressed affirmative support for the petition *at one point—i.e.*, in the preliminary questionnaire. *See id.* at 1379–80, 1381–83. In doing so, Chez Sidney "indicate[d] support of the petition . . . through questionnaire response" within the meaning of the Byrd Amendment. 19 U.S.C. § 1675c(d)(1).

CONCLUSION

We have considered the parties' remaining arguments and do not find them to be persuasive. Because Appellants failed to state a claim upon which relief can be granted, we *affirm*.

**AFFIRMED**

COSTS

No costs.

# United States Court of Appeals
# for the Federal Circuit

———————————

**ASHLEY FURNITURE INDUSTRIES, INC.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES**
*Defendant-Appellee,*

AND

**UNITED STATES INTERNATIONAL TRADE
COMMISSION,**
*Defendant-Appellee,*

AND

**AMERICAN FURNITURE MANUFACTURERS
COMMITTEE FOR LEGAL TRADE, KINCAID
FURNITURE CO., INC., L. & J.G. STICKLEY, INC.,
SANDBERG FURNITURE MANUFACTURING
COMPANY, INC., STANLEY FURNITURE
COMPANY, INC., T. COPELAND AND SONS, INC.,
AND VAUGHAN-BASSETT FURNITURE COMPANY,
INC.,**
*Defendants-Appellees.*

———————————

2012-1196

———————————

Appeal from the United States Court of International Trade in No. 10-CV-0081, Judges Gregory W. Carman, Leo M. Gordon, and Timothy C. Stanceu.

- - - - - - - - - - - - - - - - - - - -

**ETHAN ALLEN GLOBAL, INC. AND ETHAN ALLEN OPERATIONS, INC.,**
*Plaintiffs-Appellants,*

**v.**

**UNITED STATES AND UNITED STATES CUSTOMS AND BORDER PROTECTION,**
*Defendants-Appellees,*

AND

**INTERNATIONAL TRADE COMMISSION,**
*Defendant-Appellee,*

AND

**KINCAID FURNITURE CO., INC., L. & J.G. STICKLEY, INC., SANDBERG FURNITURE MANUFACTURING COMPANY, INC., STANLEY FURNITURE COMPANY, INC., T. COPELAND AND SONS, INC., AND VAUGHAN-BASSETT FURNITURE COMPANY, INC.,**
*Defendants-Appellees.*

———————————

2012-1200

———————————

Appeal from the United States Court of International Trade in No. 08-CV-0302, Judges Gregory W. Carman, Leo M. Gordon, and Timothy C. Stanceu.

CLEVENGER, *Circuit Judge*, dissenting.

The majority concludes that the "plain meaning" of the Byrd Amendment allows the International Trade Commission (ITC) to determine who qualifies as an affected domestic producer[1] based solely on the producer's response to the ITC's support/oppose question.[2] Maj. Op. at 9. This is incorrect. Nothing in the history of the Byrd Amendment, the support/oppose question, or our case law, requires a domestic producer to check a certain box in order to qualify for Byrd distributions.

I

The support/oppose question found on the ITC questionnaires has been a part of the ITC questionnaires at least since 1987, well before the 2000 Byrd Amendment,

---

[1]    The Byrd Amendment provides for the distribution of antidumping duties collected by the United States to eligible "affected domestic producers" of the dumped goods. 19 U.S.C. § 1675c(a) (2000). An "affected domestic producer" must be "a petitioner or interested party in support of the petition . . ." *Id.* § 1675c(b)(1)(A). An affected domestic producer meets the "in support of the petition" requirement by "indicat[ing] support of the petition by letter or through questionnaire response." *Id.* § 1675c(d)(1).

[2]    ITC questionnaires include the question "Petition support.--Do you support or oppose the petition?" In response to this question, the respondent may check one of three boxes: "Support," "Oppose," or "Take no position." See U.S. Int'l Trade Comm'n, GENERIC U.S. PRODUCER QUESTIONNAIRE at 2, available at http://www.usitc.gov/trade_remedy/documents/USProducerQuestionnaire.pdf.

and "is not designed solely to determine eligibility for Byrd Amendment distributions." *SKF USA v. U.S. Customs and Border Prot.*, 556 F.3d 1337, 1357-58 (Fed. Cir. 2009) (*SKF*). It served then, as it does now, a purpose unrelated to whether a domestic producer has supported an antidumping investigation.

The purpose of the support/oppose question is to allow the Department of Commerce to confirm that an antidumping petition "has been filed by or on behalf of the domestic industry." 19 U.S.C. § 1673a(c)(1)(A)(ii). Commerce must ensure that "the domestic producers or workers who support the petition account for at least 25 percent of the total production of the domestic like product" and "the domestic producers or workers who support the petition account for more than 50 percent of the production of the domestic like product produced by that portion of the industry expressing support for or opposition to the petition." 19 U.S.C. § 1673a(c)(4)(A). If the petition alone does not establish domestic industry support, Commerce must poll the industry to determine if the petition has the requisite support. § 1673a(c)(4)(D)(i).

When the Byrd Amendment was enacted, there was no mention of using the support/oppose question in the ITC's questionnaires as the basis for determining which domestic producers could receive Byrd Amendment distributions. *See, e.g.*, 146 CONG. REC. S10669-01 (daily ed. Oct. 18, 2000) (statement of Sen. William Roth) ("[C]ash payment will not be made to the whole domestic industry. Instead, only those who supported the filing of the antidumping petition will be paid. Differentiating between different parts of a domestic industry in this way is unprecedented in our trade policy and completely unwarranted."); *id.* (statement of Sen. Robert Byrd) ("My provision simply provides a mechanism to help injured U.S. industries recover from the harmful effects of illegal foreign dumping and subsidies."); 146 CONG. REC. H9,681-03 (daily ed. Oct. 11, 2000) (statement of Rep. Jim Kolbe)

("Under the amendment adopted in the Agriculture Appropriations conference report, antidumping and countervailing duties which are currently paid by the importing industry would be transferred from the U.S. Treasury Department directly in the petitioning company."). The same was true when U.S. Customs developed regulations implementing the Byrd Amendment. *See* Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers, 66 Fed. Reg. 33,920 (proposed June 26, 2001) (to be codified at 19 C.F.R. pt. 159); 66 Fed. Reg. 48,546 (Sept. 21, 2001) (final rule).

## II

There has been no apparent Congressional intent to link Commerce's polling question to the Byrd Amendment. Nonetheless, the ITC has used the support/oppose question as a litmus test for determining whether a domestic producer can receive Byrd Amendment distributions. *See PS Chez Sidney, L.L.C. v. U.S. Int'l. Trade Comm'n,* 684 F.3d 1374, 1382 (Fed. Cir. 2012) (*Chez Sidney*). This court now endorses this practice. Neither *SKF* nor *Chez Sidney* suggest that it is appropriate to distinguish between domestic producers solely on the basis of their response to the support/oppose question; in fact, we have already rejected this position as "unreasonable." *Id.*

In *Chez Sidney* we held that "when a U.S. producer assists investigation by [1] responding to questionnaires but [2] takes no other action probative of support or opposition the producer has supported the petition under 19 U.S.C. § 1675c(d). . . ." 684 F.3d at 1382. *Chez Sidney's* holding is derived from a similar statement in *SKF* where we concluded that the Byrd Amendment "only permit[s] distributions to those who *actively supported* the petition (i.e., a party that did no more than submit a bare statement that it was a supporter without answering questionnaires or otherwise actively participating would not

receive distributions).” 556 F.3d at 1353 n.26 (emphasis added).

Taken together, *SKF* and *Chez Sidney* set up a two-step test to determine who qualifies for Byrd Amendment distributions. First, the producer must have responded to the ITC questionnaires. Because the questionnaires are mandatory, all producers in the industry should pass this step. *See* 19 U.S.C. § 1333(a); *see also SKF USA Inc., v. U.S. Customs and Border Prot.*, 583 F.3d 1340, 1342-43 (Fed. Cir. 2009) (Linn, J., dissenting from denial of rehearing en banc). Second, the producer must have “actively supported” the petition and “take[n] no other action probative of support or opposition.” To determine if the producer has taken “other action probative of support or opposition” we consider the “surrounding circumstances.” *Chez Sidney*, 684 F.3d at 1382-83. The relevant factors include (1) whether the producer participated in the investigation by providing supporting information in a questionnaire response, (2) whether the producer provided supporting arguments in its responses, (3) whether the producer engaged in activity in opposition to the petition, and (4) whether the producer expressed opposition to the petition. *Id*. at 1383.

## III

Applying our holdings in *SKF* and *Chez Sidney* to the cases before us today, I conclude that both Ethan Allen and Ashley Furniture are “interested parties in support of a petition” and may qualify for Byrd Amendment distributions. Both clearly satisfy the statutory test, which states that a domestic producer meets the “in support of the petition” requirement when it “indicate[s] support . . . by letter or through questionnaire response.” 19 U.S.C. § 1675c(d)(1).

## A. ETHAN ALLEN

Ethan Allen meets both elements of the *Chez Sidney* test. Ethan Allen responded to the ITC questionnaires sent during the Wooden Bedroom Furniture Investigation and checked the "Take no position" box on both questionnaires. Evaluating the "surrounding circumstances," Ethan Allen provided supporting data to the ITC in the form of sales and production data, did not express opposition to the petition, and did not engage in any activity in opposition to the petition. *See Chez Sidney*, 684 F.3d at 1382-83. Because we have already decided that the Byrd Amendment does not require producers to make "an affirmative declaration of support for the petition," *id.* at 1380, Ethan Allen must qualify as an affected domestic producer in support of the petition.

## B. ASHLEY FURNITURE

Our prior cases also resolve Ashley Furniture's case. As with Ethan Allen, Ashley Furniture responded to both ITC questionnaires. Maj. Op. at 6. Ashley Furniture provided important sales and production data to the ITC, assisting the ITC in determining if the wooden bedroom furniture industry was injured by dumping. Ashley Furniture also did not take any action—such as appearing at hearings or submitting testimony—against the petition. Ashley Furniture did, however, express its opinion about the wisdom of the investigation by checking the "oppose" box on both questionnaire responses.

By merely checking the "oppose" box, Ashley Furniture did not transform itself into a party who "actively opposed" the petition. The majority's bare conclusion that "the government did not deny Byrd Amendment distributions to Appellants solely on the basis of abstract expression," Maj. Op. at 9, is flatly contradicted by the fact that Oakwood Interiors, a producer who received Byrd distributions, participated in the investigation in the exact

same manner as Ashley Furniture, differing only in its answer to the support/oppose question. Ashley Br. at 15.

As we recognized in *SKF*, if the Byrd Amendment penalized the mere expression of opposition to a dumping investigation, it would raise serious First Amendment concerns. 556 F.3d at 1351. Instead, we concluded that the Byrd Amendment's purpose was "to reward injured parties who assisted government enforcement of the antidumping laws by initiating or supporting antidumping proceedings." *Id.* at 1352, 1353 n.25. We then limited the statute's "support" requirement to require active support, and not a mere abstract expression of support. *See Chez Sidney*, 684 F.3d at 1381. For the same reasons, the ITC cannot use a mere expression of opposition to substitute for *active* opposition in denying Byrd Amendment distributions.

The majority elides these warnings by interpreting dictum in a footnote in *SKF* to reason that "a producer's 'bare statement that it was a supporter' is a *necessary* (though not a sufficient) condition to obtain ADP status." Maj. Op. at 11 (emphasis added). The majority errs. Nothing in *SKF* states that a producer must check the "support" box, and *Chez Sidney* actually rejects this proposition outright. *Chez Sidney*, 684 F.3d at 1380 ("Both the ITC and Customs, however, contend that § 1675c(d) requires not just the submission of letters or responses, but also the inclusion of an affirmative declaration of support for the petition. *But the statute's plain language does not require that producers indicate an expression of support other than through* a letter or by *filing a response*—it states that supporting producers are those who submit letters or responses.") (emphasis added).

In this case, Ashley Furniture expressed its abstract opposition to the petition, but its only "action" in the investigation, providing questionnaire responses, assisted

the government by providing data the government needed to determine if dumping existed and if the dumping materially injured a domestic industry. Ashley Furniture should be considered an "interested party in support of the petition," as were Oakwood Industries or Chez Sidney, and not a party in opposition to the petition, as was SKF.

IV

The court's endorsement of ITC's choice to use the support/oppose question as a shortcut for classifying domestic producers, thus mandating the expression of a point of view to distinguish between similarly situated producers, invites a serious First Amendment problem. The court in *SKF* recognized this problem when it noted that if the Byrd Amendment penalized the mere expression of opposition to a dumping investigation, it "might well render the statute unconstitutional . . . ." *SKF*, 556 F.3d at 1351. Just as the court in *SKF* heeded the counsel that we should, where possible, interpret the law to avoid constitutional conflict, we should do the same when deciding whether the answer to the support/oppose question can dictate whether a particular domestic producer is or is not "in support of the petition." I would follow our prior decisions and conclude that both Ethan Allen and Ashley Furniture may be entitled to Byrd Amendment distributions if they can show the requisite injury. Because the majority does not agree with me, I respectfully dissent.