NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**TAMPA BAY FISHERIES, INC., SINGLETON FISHERIES, INC.,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES, UNITED STATES CUSTOMS AND BORDER PROTECTION, DAVID V. AGUILAR, ACTING COMMISSIONER, UNITED STATES CUSTOMS AND BORDER PROTECTION, INTERNATIONAL TRADE COMMISSION, IRVING A. WILLIAMSON, CHAIRMAN, U.S. INTERNATIONAL TRADE COMMISSION,**
*Defendants-Appellees*

---

2012-1419

---

Appeal from the United States Court of International Trade in No. 08-CV-0404, Judge Leo M. Gordon.

---

Decided: April 29, 2015

---

JAMES KEVIN HORGAN, DeKieffer & Horgan, PLLC, Washington, DC, argued for plaintiffs-appellants. Also represented by JOHN J. KENKEL.

MARTIN M. TOMLINSON, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendants-appellees United States, United States Customs and Border Protection, David V. Aguilar, Acting Commissioner. Also represented by JESSICA R. TOPLIN, STUART F. DELERY, JEANNE E. DAVIDSON, FRANKLIN E. WHITE, JR.; SUZANNA HARTZELL-BAIRD, JESSICA MILLER, Office of Assistant Chief Counsel, United States Customs & Border Protection.

PATRICK VINCENT GALLAGHER, JR., Office of the General Counsel, United States International Trade Commission, Washington, DC, argued for defendants-appellees International Trade Commission, Irving A. Williamson, Chairman. Also represented by DOMINIC L. BIANCHI, ROBIN LYNN TURNER.

---

Before PROST, *Chief Judge,* BRYSON, and O'MALLEY, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Tampa Bay Fisheries, Inc. ("Tampa Bay") and Singleton Fisheries, Inc. ("Singleton") (collectively, "Appellants") appeal the final judgment of the United States Court of International Trade ("Trade Court") dismissing their complaint for failure to state a claim. *See Tampa Bay Fisheries, Inc. v United States*, 825 F. Supp. 2d 1331 (Ct. Int'l Trade 2012). Because the Trade Court properly determined that the parties failed to allege sufficient facts upon which relief could be granted, we *affirm*.

BACKGROUND

Following a 2003 petition on behalf of the domestic shrimp industry to the Department of Commerce ("Commerce") regarding the importation of certain frozen and canned warm water shrimp from Brazil, Ecuador, India,

China, Vietnam, and Thailand, Commerce instituted an antidumping investigation. Contemporaneously, the International Trade Commission ("Commission") began to examine whether these shrimp imports were threatening the domestic shrimp industry. To determine if the domestic industry was injured, the Commission sent questionnaires to the domestic industry, asking if they supported, opposed, or took no position on the 2003 petition.

After its investigation, the Commission found that the domestic industry was injured by the import of canned frozen shrimp, and Commerce issued its antidumping duty orders on these imports February 1, 2005. *See Certain Frozen or Canned Warmwater Shrimp and Prawns from Brazil, China, Ecuador, Thailand, and Vietnam*, 70 Fed. Reg. 3943 (Jan. 27, 2005); *Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from Brazil*, 70 Fed. Reg. 5143 (Feb. 1, 2005); *Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from Thailand*, 70 Fed. Reg. 5145 (Feb. 1, 2005); *Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from India*, 70 Fed. Reg. 5147 (Feb. 1, 2005); *Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from the People's Republic of China*, 70 Fed. Reg. 5149 (Feb. 1, 2005); *Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*, 70 Fed. Reg. 5152 (Feb. 1, 2005); *Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from Ecuador*, 70 Fed. Reg. 5156 (Feb. 1, 2005).

Under the statutory scheme at the time, any duties collected by the United States Customs and Border Patrol ("Customs") under these dumping orders were distributed to affected domestic producers. Continued Dumping and Subsidy Offset Act ("CDSOA" or "the Byrd Amendment"), 19 U.S.C. § 1675c(a) (2000), *repealed by* Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601, 120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007). To qualify as an affected domestic producer, one had to demonstrate that it "was a petitioner or interested party [who] supported . . . the petition with respect to which an antidumping duty order . . . ha[d] been enter[ed]." *Id.* § 1675c(b)(1)(A) ("the support requirement"). Once a duty order issues, the Commission forwards a list of affected domestic producers to Customs, which will distribute all the funds from the assessed duties collected in the prior fiscal year to those affected parties who have certified that they are eligible to receive a CDSOA distribution. *Id.* § 1675c(d)(1)–(3).

In connection with Commerce's antidumping investigation regarding shrimp imports, the Commission did not list Tampa Bay or Singleton as an affected domestic producer for the relevant years—2006, 2007, and 2008. Tampa Bay and Singleton nevertheless filed certifications with Customs, stating that they were entitled to CDSOA distributions. But, because neither was listed as an affected domestic producer, Customs refused to administer any funds to either party. In November 2008, Tampa Bay and Singleton requested that the Commission amend the list of affected domestic producers to include both parties in November 2008. Without any evidence that either Tampa Bay or Singleton supported the petition during the original investigations, the Commission denied the request in December 2008.

Also during this time, on November 14, 2008, Tampa Bay and Singleton filed suit against the Commission and Customs, challenging the Commission's failure to add Tampa Bay and Singleton to the list of affected domestic

producers and Customs' decision not to make a distribution to Tampa Bay or Singleton for fiscal years 2006, 2007, and 2008. While neither Tampa Bay nor Singleton alleged that they expressed support for the 2003 petition in their questionnaire responses or through a letter, they asserted that they supported the petition in other ways. They also argued that, if the Byrd Amendment is construed to require a show of support via a particular form of expression—i.e., checking a box on a questionnaire or writing a letter—it is unconstitutional. Because these issues were then being considered in other pending cases, the Trade Court stayed the case pending the final resolution of the other litigation. *Tampa Bay Fisheries,* 825 F. Supp. 2d at 1336. Following this court's decision in *SKF USA Inc. v. United States Customs & Border Protection*, 556 F.3d 1337 (Fed. Cir. 2009), which both construed the Byrd Amendment to require *both* a show of support via a questionnaire response or a letter *and* other affirmative efforts to aid the investigation, and upheld the constitutionality of the Byrd Amendment as so construed, the Trade Court issued an order asking Tampa Bay and Singleton to show cause why their case should not be dismissed in light of *SKF*. *Id.* Upon review of their response, the Trade Court lifted the stay, and, on March 18, 2011, Tampa Bay and Singleton filed an amended complaint.

In their amended complaint, Tampa Bay and Singleton raised five separate claims. They alleged that: (1) the agencies' decisions were inconsistent with the CDSOA, were not supported by substantial evidence, and were otherwise not in accordance with law; (2) the support requirement of the CDSOA violates the First Amendment of the Constitution; (3) this same requirement also violates the Equal Protection Clause; (4) the support requirement contravenes the Due Process Clause because it is impermissibly retroactive; and (5) financial evidence of support should be considered when determining whether

a party meets the support requirement of the CDSOA. Again, neither Tampa Bay nor Singleton alleged that they indicated support for the investigation in writing. Based in part on this court's ruling in *SKF*, the Commission and Customs then moved to dismiss the amended complaint for failure to state a claim.

Upon consideration, the Trade Court dismissed Tampa Bay and Singleton's entire complaint. With respect to count one and count five, the Trade Court concluded that both parties had failed to state facts that they qualified for CDSOA distributions because there was no allegation either party supported the petition via letter or questionnaire response, as required by law. *Tampa Bay Fisheries*, 825 F. Supp. 2d at 1340–42. Regarding Tampa Bay and Singleton's Equal Protection and First Amendment claims, the Trade Court dismissed these claims, finding that this court's decision in *SKF* foreclosed their requested relief. *Id.* at 1343–45. Lastly, the Trade Court concluded that both parties lacked standing to raise a due process retroactivity claim because Tampa Bay and Singleton both completed their responses to the Commission's questionnaires *after* the enactment of the CDSOA; thus, there was no basis to find that the CDSOA was applied retroactively to either party. *Id.* at 1345.[1]

Appellants timely appealed the Trade Court's decision to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

Whether a party before the Trade Court has sufficiently stated a claim for relief is a question of law we

---

[1]    Both Tampa Bay and Singleton conceded dismissal of this count as well. *See Tampa Bay Fisheries*, 825 F. Supp. 2d at 1345. Neither party disputes this finding on appeal.

review de novo. *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1049 (Fed. Cir. 2012) (citing *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000)). Questions of statutory or constitutional interpretations are also questions of law that are reviewed de novo. *See Ashley Furniture Indus., Inc. v. United States*, 734 F.3d 1306, 1309 (Fed. Cir. 2013), *cert. denied*, 135 S. Ct. 72 (2014).

Under Court of International Trade Rule 8(a)(2), a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this standard does not require "detailed factual allegations," it does require more than "a formulaic recitation of the element of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In deciding a motion to dismiss, the court must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant." *Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1365 (Fed. Cir. 2013).

In this case, Tampa Bay and Singleton's statutory and constitutional claims are foreclosed by this Court's decisions in *SKF*, *PS Chez Sidney, LLC v. United States International Trade Commission*, 684 F.3d 1374 (Fed. Cir. 2012), and *Ashley Furniture Industries, Inc. v. United States*, 734 F.3d 1306 (Fed. Cir. 2013). In *SKF*, we found that the statute unambiguously required, among other things, a show of support for the investigation via questionnaire response or a letter and that, in the absence of

such statements of support, other efforts which might happen to assist an investigation were insufficient to qualify an entity as an affected domestic producer under the Act. 556 F.3d at 1352–53. We then found that this type of support requirement did not violate the First Amendment. *Id*. at 1360. Specifically, we concluded that the purpose of the statute was to compensate those parties who assisted with the government's trade investigations because "the Byrd Amendment's language providing for payments to a 'petitioner or interested party in support of the petition' [] only permit[s] distributions to those who actively supported the petition (i.e., a party that did no more than submit a bare statement that it was a supporter without answering questionnaires or otherwise actively participating would not receive distributions)." *Id*. at 1353 n.26. Thus, we decided that the support requirement should be treated like commercial speech, as is the case when the government commercially contracts with a party for their assistance in a government function. *Id*. at 1355. Because the government has a substantial interest in preventing dumping, the Byrd Amendment directly advances this interest by rewarding parties who assist in trade law enforcement, and the amendment was not overly broad, we determined that the Byrd Amendment did not run afoul of the First Amendment. *Id*. at 1355–60. Finally, we also rejected an Equal Protection challenge in *SKF*, finding that "the Byrd Amendment [was] rationally related to the government's legitimate purpose of rewarding parties who promote the government's policy against dumping." *Id*. at 1360.

The court next considered the support requirement in *Chez Sidney*. In that case, the government denied Chez Sidney CDSOA distributions, even though Chez Sidney *had* indicated support for the petition via its questionnaire responses during the initial investigation, because it later indicated that it "took no position" on the ITC's final questionnaire. 684 F.3d at 1377. Because we had found

in *SKF* that the Byrd Amendment did not "reward or penalize abstract expression by itself," we concluded that, where a "producer submit[s] two detailed responses, check[ed] the 'support' box in its preliminary response but check[ed] the 'take no position' box in its final response," such a producer is eligible for CDSOA distributions. *Id.* at 1381.

Lastly, in *Ashley Furniture*, we reiterated our decision in *SKF*. 734 F.3d at 1310. Specifically, we stated:

> *SKF* resolved the facial <u>*First Amendment*</u> challenge presented in [the present] case[]. We are bound to follow this precedent and are not free to revisit the <u>*First Amendment*</u> arguments that were before the *SKF* panel. To the extent that Appellants argue that recent Supreme Court precedent overruled our *SKF* holding, we do not agree. We also reject the Appellants' as-applied <u>*First Amendment*</u> challenges because . . . the government did not deny Byrd Amendment distributions to Appellants solely on the basis of abstract expression.

*Id.* With respect to the Appellants then before us—Ashley Furniture and Ethan Allen—we restated that "[i]t [was] not enough . . . merely to supply the answers to the questionnaires;" to be an affected domestic producer one had to indicate support by checking the box saying so. *Id.* at 1311. Because neither party had indicated support in this fashion, even though both provided information to the Commission upon request, we concluded that Ashley Furniture and Ethan Allen could not qualify for CDSOA distributions.

Here, both parties reraise arguments already addressed in *SKF*, *Chez Sidney*, and *Ashley Furniture.* As we are bound by our prior precedent, we cannot revisit Appellants' First Amendment and Equal Protection arguments in this case. Further, although Appellants

argue in their reply brief that this court's First Amendment analysis is flawed in light of the Supreme Court's recent decision in *McCullen v. Coakley*, 134 S. Ct. 2518 (2014), our case law is clear that any argument "not raised in the opening brief [is] waived." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006). Even if not waived, moreover, Appellants fail to explain how *McCullen,* a case involving the regulation of a traditional public forum—a sidewalk—that is subject to strict scrutiny, impacts an analysis of speech this court has found to be commercial speech. 134 S. Ct. at 2528; *see SKF*, 556 F.3d at 1355 ("Rewarding parties under the circumstances here is similar to commercially contracting with them to assist in the performance of a government function, in this particular context assisting in the enforcement of government policy in litigation. The well established *Central Hudson* test seems appropriate." (citing *Central Hudson*, 447 U.S. 577, 566 (1980))). Accordingly, Appellants' arguments are unpersuasive.

Additionally, Tampa Bay's statutory claim that it should be considered a petitioner simply because it submitted responses to the Commission's questionnaires also must be dismissed in light of this court's prior decisions. At oral argument, Tampa Bay conceded that it answered "Oppose" in response to the Commission's question whether it supported, opposed, or took no position as to the 2003 petition. Oral Arg. at 00:35–54, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 12-1419.mp3. As explained in *SKF* and *Ashley Furniture*, a party that states it opposes the petition has not met the support requirement and is not entitled to CDSOA distributions, regardless of its submission of information in response to the questionnaires. *SKF*, 556 F.3d at 1358 ("Congress could permissibly conclude that it is not required to reward an opposing party."); *Ashley Furniture*, 734 F.3d at 1311 (explaining that a party who "indicate[d]

only opposition to the petition in questionnaires" cannot be considered a petition supporter).

Similarly, Singleton's claim that it was entitled to CDSOA distributions because it supported the 2003 petition by offering financial support to petitioners is unavailing. As we now have said repeatedly, in order to be considered an affected domestic producer, one must indicate support of a petition "by letter or through questionnaire response." 19 U.S.C. § 1675c(d)(1); *SKF*, 556 F.3d at 1342; *Ashley Furniture*, 734 F.3d at 1311; *see also Giorgio Foods, Inc. v. United States*, No. 13-1304, slip op. at 11 (Fed. Cir. Apr. 24, 2014). Because Singleton made no allegation in the amended complaint that it had indicated support in the manner required by statute, the Trade Court did not err when it dismissed the remainder of Singleton's claims. *See Ashley Furniture*, 734 F.3d at 1311 ("Appellants did not indicate support for the petition in a questionnaire and did not actively oppose the petition. We hold that Appellants have not supported the petition under the plain meaning of the Byrd Amendment.").

## Conclusion

Because the Trade Court correctly determined that Appellants failed to properly allege that they had supported the petition and that their statutory claims were foreclosed by this court's precedent, we affirm.

**AFFIRMED**