Opinion for the court filed by Circuit Judge DYK.
Dissenting opinion filed by Circuit Judge REYNA.
DYK, Circuit Judge.
Giorgio Foods, Inc. (“Giorgio”) appeals a judgment of the Court of International Trade (“Trade Court”) dismissing its claims for compensation under the Continued Dumping and Subsidy Offset Act (“the Byrd Amendment”). Because Giorgio failed to indicate support for the antidumping petition as required by the Byrd Amendment, we affirm.
Background
We limit the description in the background section to the claims currently on appeal. On January 6, 1998, the Coalition for Fair Preserved Mushroom Trade (“the Coalition”) filed an antidumping petition (“the petition”) alleging that domestic producers of preserved mushrooms were being injured by imports of certain preserved mushrooms from Chile, China, Indonesia, and India (collectively, “the subject countries”) that were being sold in the United States at less than fair value. See 19 U.S.C. § 1673. At the time of the petition, Giorgio was the largest domestic producer of preserved mushrooms, accounting for approximately one half of total United States production, but was neither a member of the Coalition nor a petitioner.
On January 16, 1998, the International Trade Commission (“ITC”) initiated a material injury investigation concerning imports from the subject countries. See Certain Preserved Mushrooms From Chile, China, India, and Indonesia; Institution of Antidumping Investigations and Scheduling of Preliminary Phase Investigations, 63 Fed.Reg. 2693 (USITC Jan. 16, 1998). As part of that investigation, the ITC issued questionnaires to domestic producers of preserved mushrooms, including Giorgio. Giorgio filed its preliminary response on January 22,1998.[1] The second page of the ITC questionnaire asked, “Do you support or oppose the petition? Please explain” (the “support question”). J.A. 152. It contained three check-boxes for responses: “Support,” “Oppose,” and “Take no position.” Id. Giorgio’s response to the support question did not check any of the boxes, but responded in narrative form as follows: ‘We take no position on Chile, China and Indonesia!].] We oppose the petition against India.” Id.
In response to the petition, on February 2, 1998, the Department of Commerce (“Commerce”) initiated an antidumping investigation, “determining] that the petition [wa]s filed on behalf of the domestic industry.” Initiation of Antidumping Investigations: Certain Preserved Mushrooms From Chile, India, Indonesia, and the People’s Republic of China, 63 Fed. Reg. 5360, 5361 (Dep’t of Commerce’ Feb. 2, 1998) (citing 19 U.S.C. § 1673a(b)(l)). A petition is only filed
on behalf of the industry, if—
(i) the domestic producers or workers who support the petition account for at least 25 percent of the total production of the domestic like product, and
'(ii) the domestic producers or workers who support the petition account for more than 50 percent of the production of the domestic like product produced by that portion of the indus *598 try expressing support for or opposition to the petition.
19 U.S.C. § 1673a(c)(4)(A)(i)-(ii). Commerce noted that “supporters of the petition aceount[ed] for over 50 percent of production of the domestic producers who ha[d] expressed an opinion even if Giorgio’s position [was] not disregarded],” i.e., even if Giorgio were included in the category of domestic producers not supporting the petition. 63 Fed.Reg. at 5362.
On October 22, 1998, and December 31, 1998, Commerce published final determinations in the four preserved mushroom antidumping investigations, finding that dumping had occurred with respect to each of the subject countries.[2] Between December 1998 and February 1999, the ITC determined that the domestic mushroom industry was materially injured by the import of mushrooms from the subject countries,[3] and Commerce issued corresponding antidumping orders.[4] Pursuant to these antidumping orders, the U.S. Customs and Border Patrol (“Customs”) collected final antidumping duties for imports from the subject countries. See, e.g., Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers, 66 Fed.Reg. 40,782 (Customs Aug. 3, 2001).
For entries filed between October 1, 2000, and October 1, 2007, the Byrd Amendment required that Customs collect final duties under antidumping duty orders for distribution to “affected domestic producers.” 19 U.S.C. § 1675c(a) (2000).[5] To qualify as an affected domestic producer under the Byrd Amendment, an entity was required to demonstrate that it “was a petitioner or interested party in support of the petition with respect to which an anti-dumping duty order ... has been entered.” Id. § 1675c(b)(l)(A) (hereinafter, “the support requirement”). The Byrd Amendment directed the ITC to provide Customs with a list of affected domestic producers, which includes “a list of petitioners” and “a list of persons that indicate support of the petition by letter or through questionnaire response.” Id. § 1675c(d)(l). Those entities would receive Byrd Amendment distributions.
*599 On October 2, 2001, Giorgio requested that the ITC place it on the list of affected domestic producers.[6] The ITC denied Giorgio’s request on the basis that “Giorgio’s questionnaire responses in the original investigations do not indicate support for the petition____” J.A. 244. Because Giorgio was not on the ITC list, Customs denied Giorgio’s claims for Byrd Amendment distributions.
Giorgio brought suit in the Trade Court on May 23, 2003, challenging the ITC’s refusal to include it on the list of affected domestic producers for the preserved mushroom antidumping orders and alleging that the ITC’s refusal to include it on the list violated the First Amendment. The case was stayed pending this court’s decisions in SKF USA, Inc. v. United States Customs & Border Protection, 556 F.3d 1337 (Fed.Cir.2009), and PS Chez Sidney, L.L.C. v. United States International Trade Commission, 684 F.3d 1374 (Fed.Cir.2012).
Thereafter, in SKF, we upheld the Byrd Amendment against a facial First Amendment challenge. 556 F.3d at 1349, 1360. We employed a saving construction to the Byrd Amendment to avoid constitutional questions by construing it to provide “distributions to those who actively supported the petition (i.e., a party that did no more than submit a bare statement that it was a supporter without answering questionnaires or otherwise actively participating would not receive distributions).” Id. at 1353 n. 26. Under this construction, the court found the support requirement constitutional under the standards governing commercial speech because it directly advanced the government’s substantial interest in preventing dumping by rewarding parties who assist in trade law enforcement. Id. at 1354-55. We analogized the Byrd Amendment to qui tarn actions and attorney’s fee-shifting statutes. Id. at 1359.
On June 7, 2011, following our decision in SKF, Giorgio moved to file a second amended complaint, seeking to add a statutory claim that the ITC had violated the Byrd Amendment by relying solely on Giorgio’s response to the support question in determining whether to include Giorgio on the list of affected domestic producers. According to the second amended complaint, Giorgio “agreed [with the petitioners] to provide support for [the antidumping petition] without publicly identifying itself as a petitioner.” J.A. 73. Instead, the complaint alleged that Giorgio supported petitioners’ efforts in other ways, including responding to the ITC questionnaire, contributing to petitioners’ legal fees, providing confidential commercial information to petitioners, and accompanying ITC investigators and petitioners’ counsel on a site visit of Giorgio’s facilities. Giorgio continued to assert ah as-applied First Amendment challenge, alleging that denial of payments under the circumstances violated the First Amendment.
On November 17, 2011, the Trade Court denied Giorgio’s motion to add its statutory claim as futile because it failed to state a claim in light of SKF. Giorgio Foods, Inc. v. United States, 804 F.Supp.2d 1315, 1321-22 (C.I.T.2011). And on March 6, 2013, the Trade Court granted motions to dismiss all of Giorgio’s ’claims. Giorgio Foods, Inc. v. United States, 898 F.Supp.2d 1370, 1382 (C.I.T.2013). If *600 Giorgio lost this case, its share of Byrd Amendment distributions would go to other domestic producers. Giorgio appeals the denial of its motion for leave to amend its complaint to add its statutory claim and the dismissal of its second amended complaint, alleging a First Amendment violation.
We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5). We review de novo both the Trade Court’s dismissal for failure to state a claim and its denial of leave to amend on grounds of futility. See Ashley Furniture Indus., Inc. v. United States, 734 F.3d 1306, 1309 (Fed.Cir.2013), cert. denied, — U.S.-, 135 S.Ct. 72, 190 L.Ed.2d 35 (2014). We also exercise de novo review over questions of statutory or constitutional interpretation. Id.
Discussion
I
Giorgio argues that, although it stated in its questionnaire response that it opposed the petition against India and took no position with respect to Chile, China, and Indonesia, its petition response “as a whole,” combined with its other actions in support of the petition, satisfied the Byrd Amendment’s support requirement. Appellant’s Br. 31-33. Giorgio argues that because it provided support for the petition “behind the scenes,” it should be treated as a “latent petitioner.” Appellant’s Br. 5. Thus, the question here is whether a statement of support is necessary to secure compensation under the Byrd Amendment. On that question, we do not write on a blank slate; three prior decisions of this court have addressed the support requirement.
In SKF, SKF USA (“SKF”), a domestic producer of goods that were subject to an antidumping duty order, was denied distributions under the Byrd Amendment because the ITC and Customs determined that SKF had neither been a petitioner nor supported the petition at issue. 556 F.3d at 1340. In response to the ITC’s questionnaire, SKF had stated that it opposed the petition. Id. at 1343. Under these circumstances, we found that SKF had not met the support requirement and was therefore not entitled to Byrd Amendment distributions because “Congress could permissibly conclude that it is not required to reward an opposing party.” Id. at 1358. We found that the Byrd Amendment “did not compensate all injured domestic producers, but only those who filed an anti-dumping petition and those who supported it.” Id. at 1351. We made clear that merely responding to a questionnaire did not constitute the necessary support: “At best the role of parties opposing (or not supporting) the petition in responding to questionnaires is similar to the role of opposing or neutral parties in litigation who must reluctantly respond to interrogatories or other discovery.” Id. at 1359. Indeed, under ITC regulations, “[a]ny questionnaire issued by the Commission in connection with any investigation ... may be issued as a subpoena----” 19 C.F.R. § 207.8. This provision further allows the ITC to — among other things — pursue judicial enforcement, if the ITC determines that a party has failed to “respond adequately.” Id.
In Chez Sidney, the plaintiff checked the “support” box in its preliminary response, which Commerce may rely on in order to determine whether the requirements of 19 U.S.C. § 1673a(b)(l) are satisfied for purposes of initiating an investigation, but checked the “take no position” box in its final response. See 684 F.3d at 1377, 1382. The ITC denied a distribution, id. at 1377-78, but we held that the producer qualified for distributions because it “indicat[ed] in its preliminary questionnaire response that it supported the petition....” Id. at 1379. *601 In holding that the producer had satisfied the support requirement, we specifically relied on the fact that it “expressed abstract support in the preliminary response” and “never expressed that it opposed the petition.” Id. at 1383. We found that checking the “support” box in' the preliminary questionnaire was sufficient to constitute “active support” under SKF. Id. at 1381 (citing SKF, 556 F.3d at 1353 n. 26).
Finally, in Ashley, Ashley Furniture, Inc. (“Ashley Furniture”) checked the “oppose” box on its questionnaire response, whereas Ethan Allen Global, Inc. and Ethan Allen Operations, Inc. (collectively, “Ethan Allen”) checked the “take no position” box. 734 F.3d at 1308. The ITC denied distributions. Id. at 1309. We held that neither producer satisfied the support requirement. With respect to Ashley Furniture, we explained that a finding that a producer that checked “oppose” was an affected domestic producer would “lead to the incongruous conclusion that a producer who indicates only opposition to the petition in questionnaires — the polar opposite of support — is nevertheless a supporter.” Id. at 1311. And with respect to Ethan Allen, we explained that “[t]he conclusion that a producer who indicates that it ‘takes no position’ in a questionnaire is a supporter is also incongruous because such a producer has not ‘indicated support.’ ” Id.
We held that “a producer who never indicates support for the petition by letter or through questionnaire response cannot be an [affected domestic producer]” because “a producer’s ‘bare statement that it was a supporter’ is a necessary (though not a sufficient) condition to obtain [affected domestic producer] status.” Id. (quoting SKF, 556 F.3d at 1353 n. 26). Notably, both producers in Ashley' failed to satisfy the support requirement despite the fact that they too assisted the ITC investigation by providing information. See id. at 1314 (Clevenger, J., dissenting) (“Ethan Allen provided supporting data to the ITC in the form of sales and production data.... Ashley Furniture provided important sales and production data to the ITC, assisting the ITC in determining if the wooden bedroom furniture industry was injured by dumping.”).
In this case, Giorgio’s arguments are foreclosed by Ashley, because Giorgio failed to satisfy the statutory support requirement by indicating support “by letter or through questionnaire response.” 19 U.S.C. § 1675c(d)(l). There are no statements of explicit support in Giorgio’s responses, but Giorgio argues that its answers to the questions concerning injury “are not statements that would be made by one opposing a petition.” Appellant’s Br. 9 (quoting J.A. 78). In this connection, Giorgio points to statements in its responses such as, “[d]ue to the extremely low and prevailing depressed prices for preserved mushrooms caused by imported preserved mushrooms, [Giorgio] was forced to discontinue production of its line of 68 oz. preserved mushrooms,” J.A. 154, and that “eroding profits due to extremely low and depressed prices caused by imported mushrooms[ ] will make future plans for expansion and banking requests more difficult to obtain,” J.A. 163. But those statements do not indicate support. Factual statements that indicate injury, -helpful as those may be in making the final dumping determination, are not the same as statements that indicate support for the petition. See SKF, 556 F.3d at 1351 & n. 22.
Although the statute focuses exclusively on parties who “indicate support of the petition by letter or through questionnaire response,” 19 U.S.C. § 1675c(d)(l), Giorgio further relies on “other actions it took during the ITC’s underlying investigation,” *602 including the payment of petitioners’ legal fees and providing confidential information to petitioners, to satisfy the support requirement. Appellant’s Br. 31. Even accepting Giorgio’s allegations in the complaint as true, financial arid other forms of support for the petitioners are not the same as “indicating] support of the petition by letter or through questionnaire response.” 19 U.S.C. § 1675c(d)(l) (emphasis added). As Ashley held, forms of support other than explicit statements of support in the petition are irrelevant in determining whether a producer satisfied the support requirement. See Ashley, 734 F.3d at 1311. There is nothing in the Byrd Amendment, or its legislative history, that indicates congressional intent to compensate all parties, including those who did not make an explicit statement of support for the petition. See SKF, 556 F.3d at 1350-51.
Unlike the producer in Chez Sidney, 684 F.3d at 1383, Giorgio never expressed affirmative support for the petition. See Ashley, 734 F.3d at 1311-12 (“Chez Sidney repeatedly referred to the fact that the producer expressed affirmative support for the petition at one point — i.e., in the preliminary questionnaire.”). With respect to India, Giorgio’s position is the same as that of Ashley Furniture, which also answered “oppose” on its response to the ITC questionnaire. Id. at 1308. With respect to Chile, China, and Indonesia, Giorgio’s position is the same as that of Ethan Allen, which also answered “take no position” in its response to the ITC questionnaire. Id. Ashley held that neither position taken by Giorgio in this case — opposition or the lack of a position — satisfied the support requirement for Byrd Amendment distributions. Id. at 1311.
II
• Giorgio also argues that requiring a statement of support violates the First Amendment as applied to Giorgio. This argument is also foreclosed by Ashley, which correctly held that such a requirement does not violate the First Amendment as applied to a producer that failed to indicate support. 734 F.3d at 1310-11. A statement of support is not an abstract statement of viewpoint, but rather one that has consequences. Those consequences are of two types.
First,.statements of support for the petition pr the lack of such statements can be, and in this case were, taken into account by Commerce in determining whether the statutory support requirements for the petition were satisfied. The statute imposes a requirement of statements of industry support amounting to 25% of the domestic producers in the relevant industry before Commerce can initiate an antidumping investigation. See 19 U.S.C. § 1673a(c)(4)(A)(i)-(ii). Here, Giorgio filed its preliminary response to the ITC questionnaire on January 22, 1998, prior to Commerce’s February 2, 1998, industry support determination. Commerce considered Giorgio’s questionnaire response in determining that a sufficient percentage of the domestic industry nevertheless supported the petition. 63 Fed.Reg. at 5362.
Second, in applying the threat of material injury standard, the ITC is required in every case to take account of the publicly stated support, opposition, or no position responses in the ITC questionnaire, as we explicitly held in Suramerica de Aleaciones Laminadas, C.A. v. United States, 44 F.3d 978, 984 (Fed.Cir.1994).[7] In Su *603 mmerica, none of the industry members checked the support box, one industry member expressed opposition, and the rest did not take a position. Id. at 981. We held that “domestic industry support for the petitions” was a factor “required by the statute” in determining whether there was a threat of material injury to the industry. Id. at 984. We explained that “[t]he industry best knows its own economic interests and, therefore, its views can be considered an economic factor. Indeed an industry’s failure to acknowledge an affirmative threat has direct significance.” Id. “Moreover, publicly expressed industry support for the petition, or lack of it, is probative evidence of those views.” Id. Thus, “[i]n making a determination of threat of material injury, ITC must weigh industry views and views of other interested parties....” Id.
Significantly, in Summerica, “[sjome industry members expressed additional views on the petitions in • private statements,” which in some instances “clarified a produc-er’s reasons for withholding support from the petitions.” Id. at 982. These private indications that may contradict the public position do not eliminate the significance of the public position.' As we said, “[t]hat the industry is not willing to express public support is evidence that it does not perceive a real threat of immediate harm. Private statements of support, but for other interests, can diminish but not eliminate the probative value of this relevant evidence.” Id. at 984 n. 2.
Given the real world consequences of a statement of public support (or the lack thereof) Congress is clearly not relying on an abstract expression of views.[8] Here, as in Ashley, Giorgio’s as-applied First Amendment challenge fails because “the government did not deny Byrd Amendment distributions to [Giorgio] solely on the basis of abstract expression.” 734 F.3d at 1310.
In an analogous context, it could hardly be contended that False Claims Act payments and attorney’s fees (31 U.S.C. § 3730(d)) would be available to a party, such as Giorgio, that sat on the sidelines and refused to take an open and active role in support of the government. See SKF, 556 F.3d at 1356-57 (“[T]he Byrd Amendment — like qui tarn proceedings, monetary awards of a portion of the government’s recovery, and awards of attorney’s fees— shifts money to parties who successfully enforce government policy.”). There is nothing in the First Amendment that requires the government to accommodate Giorgio’s “business reasons”, for not making a public statement in support of the petition. Appellant’s Br. 10.
*604 For these reasons, we affirm both the denial-in-part of Giorgio’s motion to amend the complaint and the dismissal of Giorgio’s complaint for failure to state a claim.
AFFIRMED.
Costs
Costs to appellees.

. Giorgio’s preliminary and final responses to the questionnaire are substantively identical. Compare J.A. 151-87 (preliminary), with J.A. 188-227 (final). Citations in this opinion will be to Giorgio’s preliminary questionnaire.

. See Notice of Final Determination of Sales' at Less Than Fair Value: Certain Preserved Mushrooms from Chile, 63 Fed.Reg. 56,613 (Dep't of Commerce Oct. 22, 1998); Notice of Final Determination of Sales at Less Than Fair Value: Certain Preserved Mushrooms from India, 63 Fed.Reg. 72,246 (Dep't of Commerce Dec. 31, 1998); Notice of Final Determination of Sales at Less Than Fair Value: Certain Preserved Mushrooms from the People's Republic of China, 63 Fed.Reg. 72,-255 (Dep’t of Commerce Dec. 31, 1998); Notice of Final Determination of Sales at Less Than Fair Value: Certain Preserved Mushrooms from Indonesia, 63 Fed Reg. 72,268 (Dep’t of Commerce Dec. 31, 1998).

. See Certain Preserved Mushrooms from Chile, 63 Fed.Reg. 66,575 (USITC Dec. 2, 1998); Certain Preserved Mushrooms from China, India, and Indonesia, 64 Fed.Reg. 9,178 (USITC Feb. 24, 1999).

. See Notice of Antidumping Duty Order: Certain Preserved Mushrooms from Chile, 63 Fed.Reg. 66,529 (Dep’t of Commerce Dec. 2, 1998); Notice of Amendment of Final Determination of Sales at Less than Fair Value and Antidumping Duty Order: Certain Preserved Mushrooms from the People’s Republic of China, 64 Fed.Reg. 8308 (Dep’t of Commerce Feb. 19, 1999); Notice of Antidumping Duty Order: Certain Preserved Mushrooms from Indonesia, 64 Fed.Reg. 8310 (Dep’t of Commerce Feb. 19, 1999); Notice of Amendment of Final Determination of Sales at Less than Fair Value and Antidumping Duty Order: Certain Preserved Mushrooms from India, 64 Fed.Reg. 8311 (Dep’t of Commerce Feb. 19, 1999).

.The Byrd Amendment was repealed in February 2006, but the repeal did not affect duties on entries of goods made prior to October 1, 2007. Deficit Reduction Act of 2005, Pub.L. No. 109-171, § 7601, 120 Stat. 4, 154 (2006).

. Giorgio’s initial request was limited to Chile, China, and Indonesia, and did not include India. According to Giorgio's second amended complaint, it did not file for Byrd Amendment distributions with respect to India for 2001 "because it would have been futile for it to do so.” J.A. 84. Beginning in 2003, however, Giorgio sought distributions for India as well.

. As the dissent points out, in making a “material injury” determination as opposed to a "threat of material injury” determination, the statute provides only that the ITC "may consider such other economic factors as are relevant to the determination.” 19 U.S.C. *603 § 1677(7)(B)(ii). The fact that the ITC might not consider the questionnaire responses in making a material injury determination hardly diminishes their significance to the threat of material injury determination. Here, as in Suramerica, 44 F.3d at 981, the ITC was asked to consider both possibilities, "whether there is a reasonable indication that imports” from each of the subject countries “are causing material injury, or threatening to cause material injury, to a U.S. industry.” 63 Fed. Reg. at 5363.

. See Ashley, 734 F.3d at 1311 ("As SKF explained, the Byrd Amendment does not reward neutral or opposing parties because filling out the questionnaire without indicating support for the petition can contribute to the petition’s defeat. Indeed, the ITC takes the level of support of the petition into account in its determination of material injury, and the petition cannot be considered as filed ‘on behalf of the industry’ unless at least 25% of the domestic producers in the relevant industry sector indicate support.” (citations omitted)); Chez Sidney, 684 F.3d at 1382 ("[A] producer’s expression of support in the response to the preliminary questionnaire is critical to the determination of whether to commence an investigation of an antidumping petition.”); SKF, 556 F.3d at 1340 n. 1.