# United States Court of Appeals
# for the Federal Circuit

---

**PAT HUVAL RESTAURANT & OYSTER BAR, INC.,
AQUA FARMS CRAWFISH, INC., CATFISH
WHOLESALE, INC., CHARLES BERNARD, DBA
CHARLES' CRAWFISH PAD, ANDRE LEGER, DBA
CHEZ FRANCOIS, JIM FRUGE, DBA
FISHERMAN'S COVE, J. BERNARD SEAFOOD
PROCESSING, INC., FRENCH'S ENTERPRISES
SEAFOOD PEELING PLANT,**
*Plaintiffs*

**SKF USA INC., JTEKT NORTH AMERICA
CORPORATION (FORMERLY KNOWN AS KOYO
CORPORATION OF U.S.A.),**
*Plaintiffs-Appellants*

**v.**

**INTERNATIONAL TRADE COMMISSION, UNITED
STATES CUSTOMS AND BORDER PROTECTION,
THE TIMKEN COMPANY, MPB CORPORATION,**
*Defendants-Appellees*

---

2012-1250, 2012-1347

---

Appeals from the United States Court of International Trade in Nos. 06-CV-0290, 06-CV-0324, 06-CV-0328, 07-CV-0035, 08-CV-0340, 10-CV-0001, Judge Gregory W. Carman.

————————————

Decided: May 7, 2015

————————————

HERBERT C. SHELLEY, Steptoe & Johnson, LLP, Washington, DC, argued for plaintiff-appellant SKF USA Inc. Also represented by CHRISTOPHER GENTILE FALCONE.

JOHN M. GURLEY, Arent Fox, LLP, Washington, DC, for plaintiff-appellant JTEKT North America Corporation. Also represented by DIANA DIMITRIUC-QUAIA, NANCY NOONAN.

PATRICK VINCENT GALLAGHER, JR., Office of the General Counsel, United States International Trade Commission, Washington, DC, argued for defendant-appellee International Trade Commission. Also represented by NEAL J. REYNOLDS, JAMES M. LYONS, ROBIN LYNN TURNER, DOMINIC L. BIANCHI.

MARTIN M. TOMLINSON, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States Customs and Border Protection. Also represented by ALEXANDER V. SVERDLOV, JOYCE R. BRANDA, JEANNE E. DAVIDSON, FRANKLIN E. WHITE, JR.; JESSICA MILLER, SUZANNA HARTZELL-BALLARD, Office of Assistant Chief Counsel, United States Customs and Border Protection, Indianapolis, IN.

TERENCE PATRICK STEWART, Stewart & Stewart, Washington, DC, argued for defendants-appellees The Timken Company, MPB Corporation. Also represented by PATRICK JOHN MCDONOUGH, GEERT M. DE PREST.

————————————

Before LOURIE, BRYSON, and CHEN, *Circuit Judges.*

BRYSON, *Circuit Judge.*

This is another in a series of cases challenging the constitutionality of the Continued Dumping and Subsidy Offset Act of 2000, 19 U.S.C. § 1675c(a) (2000), known as the CDSOA or "the Byrd Amendment." We have previously upheld that statute against challenges based on the First Amendment and the equal protection component of the Fifth Amendment's Due Process Clause. See SKF USA, Inc. v. U.S. Customs & Border Prot., 556 F.3d 1337 (Fed. Cir. 2009); see also Giorgio Foods, Inc. v. United States, Nos. 2013-1304 et al., slip op. 13-16 (Fed. Cir. Apr. 24, 2015); Ashley Furniture Indus., Inc. v. United States, 734 F.3d 1306, 1310-12 (Fed. Cir. 2013), cert. denied, 135 S. Ct. 72 (2014); PS Chez Sidney, L.L.C. v. United States Int'l Trade Comm'n, 684 F.3d 1374, 1380-81 (Fed. Cir. 2012). Today we address a challenge to the statute in which the appellants have asserted that the retroactive application of the Byrd Amendment violates due process. The Court of International Trade rejected that constitutional attack, and we affirm.

I

In the prior SKF appeal, we described the legislative background of the Byrd Amendment and litigation relating to that amendment in some detail. We therefore summarize that background only briefly here.

The Byrd Amendment provided for the distribution of antidumping duties collected by the United States to "affected domestic producers" of goods that are subject to an antidumping duty order. See 19 U.S.C. § 1675c(b)(1), (d). The statute defined an "affected domestic producer" as a party that either petitioned for an antidumping duty order or was an "interested party in support of the petition." Id. § 1675c(b)(1)(A). The Byrd Amendment was repealed in 2006, Pub. L. 109-171, § 7601(a), 120 Stat. 4, 154 (2006), but the repealing statute provided that any duties paid on goods that entered the United States prior

to the date of repeal would continue to be distributed in accordance with the pre-repeal statutory scheme. Id. § 7601(b), 120 Stat. at 154.

The Byrd Amendment provided for antidumping duties to be distributed to parties who supported the corresponding antidumping petitions that resulted in "orders or findings in effect on January 1, 1999, or thereafter." 19 U.S.C. § 1675c(d)(1). Because the Byrd Amendment directed that distributions of antidumping duties be made only to petitioners and those interested parties "in support of the petition," domestic producers who opposed antidumping petitions were not eligible for Byrd Amendment payments. Several ineligible domestic producers challenged the constitutionality of the Byrd Amendment on various grounds, leading to a number of decisions by both the Court of International Trade and this court.

The first challenge to the Byrd Amendment filed in this court was brought by SKF USA, Inc. A series of antidumping petitions had been filed seeking antidumping duty orders on two classes of imported antifriction bearings. SKF opposed the petitions, but the petitions were granted in 1989. When the Byrd Amendment was subsequently enacted in 2000, the Commerce Department distributed the duties collected under those antidumping duty orders to those domestic producers who had supported the petitions. Because SKF had opposed the petitions, the Byrd Amendment rendered SKF ineligible to receive a share of the collected duties. SKF then brought suit in the Court of International Trade, seeking a share of the duties collected under the antidumping duty orders on antifriction bearings for fiscal year 2005.

SKF's principal argument was that the Byrd Amendment impermissibly discriminates among participants in an antidumping investigation in violation of the First Amendment and equal protection principles. SKF prevailed in the Court of International Trade on its equal

protection claim, see 451 F. Supp. 2d 1355 (Ct. Int'l Trade 2006), but this court reversed. On appeal, SKF put forward its First Amendment argument as its primary theory for affirmance. We rejected that argument, holding that the Byrd Amendment's provision granting payments only to parties who supported the antidumping petition was not a penalty based on speech, but instead was a constitutionally permissible reward for supporting the enforcement of U.S. antidumping law. SKF USA, Inc. v. U.S. Customs & Border Prot., 556 F.3d 1337, 1355-60 (Fed. Cir. 2009). We also rejected SKF's secondary argument that the Byrd Amendment denied it the equal protection of the laws, holding that the statute served a substantial governmental interest and was not unconstitutional under the "rational basis standard" typically applied to equal protection challenges to economic regulations. Id. at 1360.

In the two cases that led to this appeal, appellants JTEKT and SKF USA, Inc., filed constitutional challenges in 2006 to the petition-support requirement of the Byrd Amendment.[1] They were among those domestic producers who did not support the antidumping petitions relating to antifriction bearings and were therefore not awarded distributions of antidumping duties under the Byrd Amendment. They alleged that by depriving them of a share of those disbursements—while providing disbursements to their competitors who had supported the

---

[1] SKF USA, Inc., was a party to the first *SKF* case, which was decided by this court in 2009, and is also a party to this appeal. The first case involved distributions of Byrd Amendment funds for fiscal year 2005; SKF's complaints in this case involve distributions for fiscal years 2004 and 2006. SKF has raised additional constitutional challenges to the statute in this appeal beyond those raised in the first appeal.

petitions—the statute violated their rights under the First Amendment and both the equal protection and due process guarantees of the Fifth Amendment. The trial court stayed the action pending this court's disposition of the first *SKF* appeal.

After this court's decision in the first SKF case, the Court of International Trade dismissed the complaints filed by JTEKT and SKF in the present cases for failure to state a claim upon which relief could be granted. The court also granted judgment as to several claims raised by JTEKT and SKF on timeliness and mootness grounds.

While SKF precluded the challenges on First Amendment and equal protection grounds, the complaints also alleged that the petition-support requirement of the Byrd Amendment is impermissibly retroactive. The Court of International Trade rejected that argument, holding that the retroactive reach of the petition-support requirement in the Byrd Amendment is justified by a rational legislative purpose and therefore is not vulnerable to attack on constitutional due process grounds. Pat Huval Rest. & Oyster Bar, Inc. v. U.S. Int'l Trade Comm'n, 823 F. Supp. 2d 1365, 1377 (Ct. Int'l Trade 2012). The court explained that it "was not arbitrary or irrational for Congress to conclude that the legislative purpose of rewarding domestic producers who supported antidumping petitions . . . would be more fully effectuated if the petition support requirement were applied both prospectively and retroactively." 823 F. Supp. 2d at 1377 (quoting N.H. Ball Bearing, Inc. v. United States, 815 F. Supp. 2d 1301, 1309 (Ct. Int'l Trade 2012)) (alteration in original) (internal quotation marks omitted). Thus, the court ruled that it was not impermissible for Congress to base eligibility for Byrd Amendment disbursements "on a decision on whether to support the petition that Plaintiffs made prior to the enactment of the CDSOA." Id.

The trial court also held that two of the claims—SKF's claim for fiscal year 2004 distributions and JTEKT's claim for fiscal year 2006 distributions—were barred by the two-year statute of limitations in 28 U.S.C. § 2636(i). According to the trial court, those claims accrued when Customs and Border Protection published its notice of intent to distribute duties for the applicable fiscal year in the Federal Register, which was more than two years before SKF and JTEKT filed their complaints for the distributions attributable to those fiscal years. 823 F. Supp. 2d at 1374.

SKF and JTEKT took appeals from the judgments against them. Their appeals were consolidated and then stayed pending this court's decision in the Ashley Furniture case, which involved a further First Amendment challenge to the petition-support requirement of the Byrd Amendment. In its decision in Ashley Furniture, this court affirmed the dismissal of the First Amendment challenges raised in that case. 734 F.3d at 1310-12. Following the decision in Ashley Furniture, the private appellees—the Timken Corporation and MPB Corporation—moved for summary affirmance in the present cases. This court denied the motion for summary affirmance, and the cases proceeded to briefing and argument.

## II

Issues of retroactivity frequently involve questions of whether a particular statute was intended to have retroactive effect or not. This case does not present that issue, as it is clear that the Byrd Amendment applies retroactively; that is, it provides for distributions to parties who expressed their support for antidumping petitions prior to the enactment of the statute.

In its brief, the International Trade Commission argues that the statute is not retroactive because it does not impose any burdens on parties such as SKF and JTEKT on account of their failure to support the antidumping

petitions other than denying them disbursements. However, the appellants contend that they have suffered injury from the petition-support requirement of the Byrd Amendment because they have suffered competitive injury on account of the distributions made to their competitors who supported the petition. Had they been aware that support of the petition would result in distributions, they argue, they might have acted differently.

The competitive injury claimed by the appellants is indirect, unlike injuries typically suffered as a result of retroactive legislative acts, such as imposing liability for conduct that was not prohibited at the time of the conduct, or imposing fees for past activity after the activity has ceased. Nonetheless, the claim of injury is sufficiently plausible that it is reasonable to treat the Byrd Amendment as retroactive in effect, even though the retroactivity is substantially less severe than in other cases. See, e.g., Canadian Lumber Trade Alliance v. United States, 425 F. Supp. 2d 1321, 1338-41 (Ct. Int'l Trade 2006), vacated in part on other grounds, Canadian Lumber Trade Alliance v. United States, 517 F.3d 1319 (Fed. Cir. 2008).

For that reason, we treat the Byrd Amendment as retroactive in effect. The question before us, then, is whether the retroactive application of the statute violates the Due Process Clause of the Fifth Amendment.[2]

---

[2] Several of the cases cited by the appellants address the question whether a particular statute should be interpreted as having retroactive effect. *See Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994); *Princess Cruises, Inc. v. United States*, 397 F.3d 1358 (Fed. Cir. 2005). Because we conclude that the Byrd Amendment is retroactive, those cases have no application here.

The due process restrictions on Congress's freedom to legislate on economic matters are not exacting. The Supreme Court explained in Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15 (1976), that "legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and . . . the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." That principle is fully applicable to retroactive legislation. "[T]he strong deference accorded legislation in the field of national economic policy is no less applicable when that legislation is applied retroactively." Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 729 (1984). It has been recognized that "[t]he retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former," id. at 730 (quoting Usery, 428 U.S. at 17), but that standard is met so long as the retroactive application of the legislation is "justified by a rational legislative purpose," id.; see also Brooks v. Dunlop Mfg. Inc., 702 F.3d 624, 628 (Fed. Cir. 2012); Commonwealth Edison Co.

The private party appellees argue that the Due Process Clause does not apply in this case because the appellants have not shown that they have been deprived of any vested property right. This court has ruled that while the presence of vested rights may be relevant to the due process analysis of retroactive legislation, it is not a threshold test. *GPX Int'l Tire Co. v. United States*, 780 F.3d 1136, 1141 (Fed. Cir. 2015). We therefore decide this case on the merits of the due process claim and do not decide whether the competitive injury claimed by the appellants constitutes a deprivation of a cognizable property interest of the sort that would be sufficient to trigger procedural due process rights.

v. United States, 271 F.3d 1327, 1341 (Fed. Cir. 2001) (en banc).

The Supreme Court has been quite explicit on that point: "Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches." Pension Benefit Guar. Corp., 467 U.S. at 729. As this court has recognized, "[t]he presumption of constitutionality is extremely difficult to overcome," Wheeler v. United States, 768 F.2d 1333, 1337 (Fed. Cir. 1985), and therefore "such Due Process challenges will only succeed in the rarest of cases," Commonwealth Edison, 271 F.3d at 1345.

Based on those applicable standards, this court's 2009 decision in SKF largely decides this issue against the appellants here. In that case, addressing First Amendment and equal protection challenges to the Byrd Amendment, the court held that the statute was "within the constitutional power of Congress to enact," that it furthered "the government's substantial interest in enforcing the trade laws," and that it was "not overly broad." SKF, 556 F.3d at 1360. In particular, the court found that the purpose of the statute was "to reward injured parties who assisted government enforcement of the antidumping laws by initiating or supporting antidumping proceedings," id. at 1352, and that the government "has a substantial interest in rewarding those who assist in the enforcement of government policy," id. at 1355. For that reason, the court concluded, it was "rational for Congress to conclude that those who did not support the petition should not be rewarded," id. at 1359, and that the statute was "rationally related to the government's legitimate purpose of rewarding parties who promote the government's policy against dumping," id. at 1360.

The SKF court's conclusion that the statute promoted a substantial governmental interest in a rational manner, albeit reached in the context of First Amendment and equal protection analysis, is nonetheless squarely applicable here, where the constitutionality of the statute turns on the same standard: whether the statute is rationally related to a legitimate legislative purpose.

In their reply brief, the appellants cite Zobel v. Williams, 457 U.S. 55, 62 (1982), for the proposition that rewarding parties for past conduct is not a legitimate governmental purpose. Zobel, however, does not stand for such a broad proposition. In that case, the State of Alaska provided citizens with distributions derived from state receipts from natural resource development. The state allocated different amounts to citizens based on the length of each citizen's residence in the state, including periods prior to the enactment of the statute providing for those distributions.

The Supreme Court in Zobel held that the articulated state justification for the disbursement scheme—to reward citizens for unspecified past contributions to the state—was not a legitimate state purpose that would justify the differential treatment of citizens based on the length of their residence in the state. Citing Shapiro v. Thompson, 394 U.S. 618 (1969), the Court ruled that the Equal Protection Clause of the Fourteenth Amendment prohibits making the amount of a cash dividend depend on the length of a citizen's residence in the state, just as it would prohibit limiting eligibility for civil service jobs or government contracts to long-time residents, or charging citizens different amounts for the use of public facilities based on the length of their residence in the state. 457 U.S. at 63-64.

This case does not involve the issue of discriminating among citizens of a state based on the length of their residence in the state. It therefore does not run afoul of

the principles articulated by the Supreme Court in Zobel and Shapiro v. Thompson. Nothing in Zobel suggests that its analysis is so broad as to render illegitimate any legislative action designed to reward conduct that preceded the enactment of the legislation. This court's decision in SKF makes clear that equal protection does not sweep that broadly.

The appellants have failed to distinguish the determination of the *SKF* court that there is a "rational relationship" between a party's past support for an antidumping petition and legislatively sanctioned rewards for that past conduct. For that reason, the appellants have not met their burden of showing that when it enacted the Byrd Amendment, Congress acted in "an arbitrary and irrational way." *Usery*, 428 U.S. at 15.[3]

The appellants make several arguments in support of their contention that the retroactive aspect of the Byrd Amendment "is not rationally related to a legitimate governmental purpose." Appellants' Br. 19. First, they contend that "[r]ewarding speech and conduct that occurred prior to the enactment of the CDSOA will not further the governmental purposes of preventing dumping or enforcing the trade laws." Id.

---

[3] This court in *GPX* set out a nonexclusive list of factors that bear on whether particular retroactive legislation is constitutional. They include whether the retroactive provision is wholly unexpected and whether the new statute is remedial in nature. *GPX*, 780 F.3d at 1142. Another relevant consideration is whether the complaining party has suffered a direct burden as a result of the retroactive statute. Where, as here, the complaining party has suffered only an indirect injury, the factors relating to detrimental reliance have less weight.

The problem with the appellants' position is that it treats the legislative purpose of rewarding parties that have supported antidumping petitions as having only one legitimate objective—"incentivizing litigation support activities that aid enforcement of the trade laws." Appellants' Br. 20. That purpose, according to the appellants, is "only rationally related to post-enactment orders where domestic producers had notice of the CDSOA's provisions." Id. In the appellants' view, "[t]o reward pre-enactment litigation support activities would be gratuitous and unrelated to the goal of motivating compliance with governmental policy." Id.

The appellants are mistaken in two respects. First, a legislative purpose to reward particular conduct is valid for its own sake, not just because it may have the effect of incentivizing particular conduct. Thus, for example, a legislative program retroactively providing benefits to veterans is justified as a reward to the veterans for their service; its rationality does not depend on whether the program induces others to join the military. Indeed, some such programs have no direct prospective effects at all (such as programs limited to veterans of a particular past conflict) but nonetheless undoubtedly serve a legitimate legislative purpose and thus do not offend the Due Process Clause on account of their retroactive effect.[4]

---

[4] That example cannot be distinguished on the ground that in this case the appellants claim to have suffered competitive injury from the disbursements made to their competitors in the domestic industry; statutory benefits to veterans include such benefits as preference in civil service employment, which gives veterans a competitive advantage over non-veterans, yet such statutes have been consistently upheld against constitutional challenge. *See, e.g.*, *Regan v. Taxation with Representation*, 461 U.S. 540, 551 (1983); *Personnel Adm'r v. Feeney*, 442 U.S. 256

Second, even to the extent that the purpose of the Byrd Amendment was to encourage support for trade policy, retroactive payments to supporters are rationally related to that objective. By giving the statute retroactive effect, Congress increased the magnitude of the rewards to supporters of antidumping petitions. The magnitude of the rewards—even retroactive rewards—serves as a measure of congressional support for the conduct at issue, thereby encouraging similar conduct in the future. *See Landgraf*, 511 U.S. at 267-68 ("Retroactivity provisions often serve entirely benign and legitimate purposes, . . . [including] giv[ing] comprehensive effect to a new law Congress considers salutary."); *Pension Benefit Guar. Corp.*, 467 U.S. at 730 ("[I]t was eminently rational for Congress to conclude that the purposes of the [legislation before the Court] could be more fully effectuated if its withdrawal liability provisions were applied retroactively.").

The Court of International Trade made this point clearly in language upon which we cannot improve:

> It was not arbitrary or irrational for Congress to conclude that the legislative purpose of rewarding domestic producers who supported antidumping petitions, i.e., the very legislative purpose the Court of Appeals recognized, would be "more fully effectuated if the petition support requirement were applied both prospectively and retroactively. See Pension Benefit, 467 U.S. at 730-31. By doing so, Congress provided monetary rewards, in the form of reimbursed expenses, not only to domestic producers expressing support for petitions in future antidumping investigations but also to those domestic producers who supported past antidump-

---

(1979); *Russell v. Hodges*, 470 F.2d 212, 218 (2d Cir. 1972).

ing petitions that ripened into antidumping duty orders and who continue to produce goods competing with imported merchandise subject to those orders. By applying the CDSOA to the approximately 350 antidumping and countervailing duty orders in effect before the CDSOA enactment, rather than only to those orders issued afterwards, Congress provided a reward mechanism that was considerably more comprehensive than one based only on a prospective scheme.

*N.H. Ball Bearings, Inc. v. United States, 815 F. Supp. 2d 1301 (Ct. Int'l Trade 2012) (citation omitted), aff'd, 563 F. App'x 779 (Fed. Cir. 2014).*

The appellants also argue that the retroactive application of the Byrd Amendment is not rationally related to legitimate governmental interests because not all qualifying parties receive distributions. That is, in some instances antidumping duty orders provide no revenue, and thus no distributions can be made.

That argument is frivolous. If it is rational for the government to make payments from a fund to reward a certain class of persons, it is no less rational for the government to provide that those payments will be made whenever such funds are available, but not otherwise. That is particularly true in light of the fact that when antidumping duties are not available for disbursement, that means that dumping has not continued for the covered products, and that the antidumping duty order has effectively eliminated unfair import pricing for those products. In that situation, where the domestic producers are no longer being injured, Congress could legitimately conclude that, in light of the purpose of rewarding injured domestic producers, there is less need to provide payments to producers who supported the antidumping petition.

In their reply brief, the appellants challenge the rationality of the Byrd Amendment's distinction between those domestic industries that supported the petition and those that did not. They argue that to the extent the Byrd Amendment is intended to remedy injury caused by dumping, it is not reasonable to assume that those who supported the antidumping petition were injured, while those who did not support the petition were not.

Because the rationale for the statute identified in *SKF* was principally one of reward, not remedy, that argument does not address the main justification for the distinction drawn by the statute. In any event, to the extent that the statute is addressed to remedial concerns, the statutory distinction may not be a perfect fit for assessing injury, but it is not irrational. Looking to those who asked for protection from dumping is at least a reasonable proxy for those who needed it.

The appellants next contend that the Byrd Amendment is constitutionally suspect because it was devised as "a means of retribution" against parties who did not support antidumping petitions. To the contrary, there is no indication that the Byrd Amendment was intended to serve a retributive purpose, and the appellees have not defended its constitutionality on that ground.

To support their "retribution" argument, the appellants point out that the Byrd Amendment provides that a company that opposed an antidumping petition cannot make itself eligible for disbursements simply by acquiring a company that supported a petition. *See* 19 U.S.C. § 1675c(b)(1). That provision of the statute is not evidence of a retributive purpose. Instead, it simply maintains the integrity of the line between those companies that supported an antidumping petition and those that did not. It does so by closing a potential loophole that would allow non-supporters in effect to purchase the right to disbursements under the Byrd Amendment by acquir-

ing a company that had supported the petition. Congress's decision to distinguish between supporters of a petition and non-supporters is not an indication of a punitive or retributive purpose, but simply underscores Congress's purpose of according separate treatment to those two classes of domestic producers, a purpose that we have already held, in *SKF,* to be valid.

Finally, the appellants argue that the retroactive nature of the Byrd Amendment renders the statute unconstitutional because it has produced too great a reward for the particular beneficiaries of the antidumping duty order at issue in this case. It is difficult to understand how the legitimate purpose of rewarding particular conduct is rendered illegitimate if the rewards are too generous. In any event, however, the amount collected in antidumping duties can be viewed as a rough indicator of the degree of injury suffered by the domestic industry and the need for an antidumping remedy, so the fact that petition supporters in industries in which large sums were collected have received generous distributions does not render the statutory scheme irrational.

For those reasons, we reject the appellants' contention that the retroactive application of the Byrd Amendment violates the Due Process Clause of the Fifth Amendment.

### III

The Court of International Trade held that the claim by SKF for distributions for fiscal year 2004 and the claim by JTEKT for distributions for fiscal year 2006 were barred by the two-year statute of limitations in 28 U.S.C. § 2636(i).[5] The appellants argue that "if successful as to

---

[5] There is some confusion as to whether the trial court held that JTEKT's claim for distributions for fiscal year 2004 was time-barred. The appellants assert that the court so held, but the court's opinion does not contain

the Due Process claims, they challenge the CIT's statute of limitations decision for each Plaintiff-Appellant." Appellants' Br. 3. In the earlier *SKF* case, we assumed, without deciding, that the statute of limitations in section 2636(i) is jurisdictional, but we held that SKF had satisfied the statute. *SKF*, 556 F.3d at 1347-49. In this case, we likewise assume that the statute of limitations is jurisdictional, but again find that it is not necessary to decide that issue.

Although each appellant had at least one claim that the trial court held to be time-barred, each also had at least one claim that was timely. As to JTEKT, the trial court held that its claim for distributions for fiscal year 2006 was untimely because the complaint raising that claim was not filed until 2008, more than two years after the notice of intent to distribute was published for that year. However, as the parties acknowledge, JTEKT's 2006 complaint referenced its claim for distributions for fiscal year 2006. JTEKT's claim for fiscal year 2006 was therefore timely. With respect to SKF, it is undisputed that its claim for distributions for fiscal year 2006 was timely.

Because each appellant has raised a claim that was clearly within the limitations period, we have jurisdiction to reach the merits of the appellants' due process claims. And because the appellants represented in their brief that they challenge the trial court's ruling on the statute of limitations issue only if they prevail on their due process claim, our decision rejecting the due process claim means that the claims that the trial court found to be barred on limitations grounds are not before us. We therefore

---

an explicit ruling on that issue. We will assume, with the appellants, that the court implicitly ruled against JTEKT on that issue, as it makes no difference to the disposition of this appeal.

affirm the judgment as to both appellants without reaching the issue of untimeliness as to the claim for distributions in fiscal year 2004.

**AFFIRMED**