Concurring opinion filed by Circuit Judge WALLACH.
O’MALLEY, Circuit Judge.
The Continued Dumping and Subsidy Offset Act of 2000 (“CDSOA”) provided for the distribution of antidumping duties collected by the United States to “affected domestic producers” (“ADPs”) of the dumped goods. See Pub.L. No. 106-387, §§ 1001-03, 114 Stat. 1549, 1549A-72 to - 75 (codified at 19 U.S.C. § 1675c (2000)), repealed by Deficit Reduction Act of 2005, Pub.L. No. 109-171, § 7601, 120 Stat. 4, 154 (Feb. 8, 2006). Schaeffler Group USA, Inc. (“Schaeffler”) appeals from the decision of the Court of International Trade (“Cit”) dismissing Schaeffler’s challenge to the constitutionality of the CDSOA under the Due Process Clause of the Fifth Amendment of the U.S. Constitution. Schaeffler Grp. USA, Inc. v. United States, *1356 808 F.Supp.2d 1358 (Ct. Int’l Trade 2012). Because we find' that Congress had a rational basis justifying the retroactive application of the petition support requirement of the CDSOA, we affirm.
BACKGROUND
I
Much of the background regarding how the CDSOA applies to producers of dumped goods has been explained in detail in SKF USA, Inc. v. U.S. Customs & Border Protection, 556 F.3d 1337 (Fed.Cir.2009) (“SKF”). As in SKF, this appeal involves the petition support requirement of the now-repealed CDSOA. In an anti-dumping investigation, the International Trade Commission (“ITC”) must determine if the dumping of certain imports has materially injured or threatened material injury to the domestic industry. 19 U.S.C. § 1673 (2012). To assess material injury, the ITC sends questionnaires to foreign producers and exporters, as well as members of the domestic industry, seeking production and financial data. SKF, 556 F.3d at 1341. These questionnaires include a specific question asking the respondent to indicate whether they support, oppose, or take no position on the petition. Id. Relying on the information provided in these questionnaires, the ITC and the Department of Commerce (“Commerce”) make final determinations that potentially lead to the imposition of an antidumping order. Id. The antidumping order imposes a duty on imported merchandise “in an amount equal to the amount by which the normal value exceeds the export price (or the constructed export price) for the merchandise,” and the United States Customs and Border Protection (“Customs”) agency collects these duties. 19 U.S.C. § 1673.
Under the CDSOA, rather than keep the collected duties in the United States Treasury, Customs distributed the duties to eligible ADPs within the particular domestic industry at issue. 19 U.S.C. § 1675e(a),(e) (2000), repealed by Pub.L. No. 109-171, § 7601, 120 Stat. at 154. Only members of the domestic industry that qualified as ADPs were eligible to receive the CDSOA distributions. Id. § 1675e(b)(l). The CDSOA defined “affected domestic producer” as:
[A]ny manufacturer, producer, farmer, rancher or worker representative (including associations of such persons) that — (A) was a petitioner or interested party in support of the petition with respect to which an antidumping duty order, a finding under the Antidumping Act of 1921, or a countervailing duty order has been entered, and (B) remains in operation.
Id. (emphasis added) (“petition support provision”). The CDSOA required the ITC to provide Customs with a list of all “petitioners and ... persons” that indicated support for all antidumping orders in effect as of January 1, 1999. Id. § 1675c(d)(l). The CDSOA also required the ITC to provide Customs with the. names of any petitioners that indicated support for antidumping orders issued after enactment of the CDSOA. Id. Customs then published annual lists of ADPs, including instructions for how eligible ADPs could make a claim for CDSOA distributions. SKF, 556 F.3d at 1345. Producers who were not on Customs’ annual list of ADPs could still seek CDSOA distributions, and Customs retained discretion over approval of such requests. The CDSOA applied to all antidumping and countervailing duties assessed and collected on entries between October 1, 2000, and October 1, 2007, when Congress repealed the CDSOA. Deficit Reduction Act of 2005, Pub.L. No. 109-171, § 7601, 120 Stat. at 154. Importantly, the repeal of the CDSOA was not retroactive — Con *1357 gress stated that “[a]ll duties on entries of goods made and filed before October 1, 2007 ... shall be distributed as if [the CDSOA] had not been repealed.” Id. § 7601(b).
II
Commerce initiated an antidumping investigation on antifriction bearings and parts thereof from the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom on April 27, 1988. Anti-friction Bearings (Other than Tapered Roller Bearings) and Parts Thereof from France: Initiation of Antidumping Duty Investigation, 53 Fed.Reg. 15,074 (Apr. 27, 1988). The ITC instituted a material injury investigation on April 11, 1988. Anti-friction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom, 53 Fed.Reg. 11,917 (Apr. 11, 1988). Schaeffler’s predecessor corporate entities INA USA Corp. (“INA”) and FAG Bearings Corp. (“FAG”) participated in the investigations, but did not support the petition for any countries involved. The ITC eventually found a material injury to domestic industry, Views of the Commission, Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof from the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom, USITC Pub. 2185 (May 1989), and Commerce instituted antidumping orders against certain classes of the relevant merchandise, Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings and Parts Thereof From the Federal Republic of Germany, 54 Fed.Reg. 20,900-11 (May 15,1989).
The initial ITC list of qualifying ADPs sent to Customs included the antifriction bearings antidumping order issued on May 15, 1989. Customs then published its first notice of intent to distribute CDSOA funds on August 3, 2001. Distribution of. Continued Dumping and Subsidy Offset to Affected Domestic Producers, 66 Fed.Reg. 40,782, 40,788, 40,796 (Aug. 3, 2001). Schaeffler, INA, and FAG were not identified as eligible ADPs on either the ITC list or Customs notice because INA and FAG failed to indicate their support for the petition in the questionnaires they submitted during the ITC’s material injury investigation. Schaeffler also did not appear as an ADP on any of the later notices of intent issued by Customs.
Schaeffler filed a written request with the ITC on May 4, 2007, seeking to be included as an ADP. Before receiving a response from the ITC, Schaeffler also filed a certification request with Customs on July 30, 2007, this time seeking a CDSOA distribution for fiscal year 2007. The ITC denied Schaeffler’s request on August 2, 2007, and Customs denied Schaeffler’s request on September 28, 2007. Schaeffler again petitioned Customs for CDSOA distributions for fiscal years 2008 and 2009, and Customs denied both requests.
Schaeffler also filed a series of complaints in the CIT between 2006 and 2009 seeking review of the determinations of the ITC and Customs, as well as challenging the constitutionality of the CDSOA. Schaeffler Grp., 808 F.Supp.2d at 1359-60. The court stayed Schaeffler’s complaints pending resolution of the constitutional issues raised in Pat Huval Restaurant & Oyster Bar, Inc. v. United States. Schaeffler Grp., 808 F.Supp.2d at 1359-60. After we issued our decisions in SKF and P.S. Chez Sidney v. U.S. International Trade Commission, 409 Fed.Appx. 327 (Fed.Cir. *1358 2010), upholding the constitutionality of the CDSOA against First Amendment and equal protection challenges, the CIT consolidated Schaeffler’s complaints. The ITC and intervenors Timken Company and MPB Corporation (“Timken”) then moved to dismiss the complaints and sought judgment on the pleadings. Schaeffler Grp., 808 F.Supp.2d at 1359-60.
Schaeffler challenged the petition support requirement of the CDSOA under three provisions of the Constitution: (1) the free speech clause of the First Amendment as applied against Schaeffler; (2) the equal protection guarantees of the Due Process Clause of the Fifth Amendment as applied against Schaeffler; and (3) the substantive guarantees of the Due Process Clause of the Fifth Amendment. Id. at 1361. The CIT first held that Schaeffler failed to plead facts sufficient to distinguish its First Amendment and equal protection claims from those alleged and rejected in SKF. Id. at 1362-63. The CIT also concluded that the Supreme Court’s then-recent decisions in Snyder v. Phelps, 562 U.S. 443, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011), and Citizens United v. Federal Election Commission, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010), did not undermine our analysis in SKF. Schaeffler Grp., 808 F.Supp.2d at 1362-63. Schaef-fler has not appealed the CIT’s First Amendment and equal protection determinations.
The CIT further concluded that the CDSOA petition support requirement is not impermissibly retroactive under the Due Process Clause. Id. at 1363. Relying on its recent decision in New Hampshire Ball Bearing, Inc. v. United States, 815 F.Supp.2d 1301 (Ct. Int’l Trade 2012), the court found “that ‘it would not be arbitrary or irrational for Congress to conclude that the legislative purpose of rewarding domestic producers who supported anti-dumping petitions ... would be ‘more fully effectuated’ if the petition support requirement were applied both prospectively and retroactively.’ ” Id. (quoting N.H. Ball Bearing, 815 F.Supp.2d at 1309). Concluding that the retroactive reach of the petition support requirement in the CDSOA was “justified by a rational legislative purpose,” the court dismissed Schaeffler’s due process cause of action for failure to state a claim upon which relief can be granted. Id.
Schaeffler filed a timely notice of appeal on March 14, 2012, challenging only the CIT’s Due Process Clause ruling.[1] We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).
Discussion
I
We review issues of constitutional interpretation de novo. Ashley Furniture Indus., Inc. v. United States, 734 F.3d 1306, 1309 (Fed.Cir.2013) (citations omitted). Economic legislation “come[s] to the Court with a presumption of constitutionality,” Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 637, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993), which is “extremely difficult to overcome,” Wheeler v. United States, 768 F.2d 1333, 1337 (Fed.Cir.1985); see also Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1338 (Fed.Cir.2001) (en banc).
This is not the first appeal where our court has considered the constitutionality of the petition support requirement of the CDSOA. In SKF, the petitioner argued *1359 that the CDSOA violated the First Amendment because it authorized impermissible viewpoint discrimination, and violated the equal protection guarantees of the Due Process Clause because there was “no rational basis for distributing anti-dumping duties only to domestic producers who supported an antidumping petition, and excluding similarly situated domestic producers who opposed or took no position on a petition.” SKF, 556 F.3d at 1346. The SKF majority first concluded that the petition support provision was valid under the First Amendment. Id. at 1349-60. Applying the doctrine of constitutional avoidance, the majority found that “the purpose of the [CDSOA’s] limitation of eligible recipients was to reward injured parties who assisted government enforcement of the antidumping laws by initiating or supporting antidumping proceedings,” and that “the reward construction of the [CDSOA] is reasonable.” Id. at 1352-53. The majority determined that SKF’s responses to the ITC questionnaires are protected speech, and analyzed the “reward rationale” for the CDSOA under the commercial speech test outlined in Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). SKF, 556 F.3d at 1354-60. Under the intermediate scrutiny of the Central Hudson test, the majority held that “the government has a substantial interest in rewarding those who assist in the enforcement of government policy” and that domestic industry participants that oppose petitions but still respond to the questionnaire provide information to the ITC and Commerce, but it was “rational for Congress to conclude that those who did not support the petition should not be rewarded,” in successful enforcement actions. Id. at 1357-59.
The SKF panel similarly analyzed the “reward rationale” under SKF’s equal protection challenge. Id. at 1360. Applying rational basis review, the panel found “that the [CDSOA] is rationally related to the government’s legitimate purpose of rewarding parties who promote the government’s policy against dumping.” Id. Judge Linn wrote a lengthy dissent disagreeing with the majority’s First Amendment analysis. Id. at 1361-78 (Linn, J., dissenting). Judge Linn, however, agreed with the majority that the CDSOA would survive rational basis review. Id. at 1378 n. 8 (“I agree with the majority’s conclusion that, if the [CDSOA] were subject to rational basis review under the Equal Protection Clause, it would survive — -though I do so for different reasons. Though the petition support requirement is not a good proxy for the seriousness of a domestic producer’s injury, I would not conclude, as the Court of International Trade did, that it is an irrational proxy.”). We affirmed in PS Chez Sidney that “SKF is controlling with regards to all constitutional issues presented.” 409 Fed.Appx. at 329; see also Ashley Furniture, 734 F.3d at 1310 (“SKF resolved the facial First Amendment challenge presented in these cases. We are bound to follow this precedent. ...”).
As mentioned, the CIT previously upheld the petition support requirement as constitutional in the face of a Due Process Clause challenge in New Hampshire Ball Bearing. 815 F.Supp.2d at 1306-09. The CIT found that the petition support requirement had retroactive effect “in that it conditions the receipt of distributions on support decisions including support decisions that were made before the statute was passed.” Id. at 1307. Applying Supreme Court precedent from Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), and Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 729, 104 *1360 S.Ct. 2709, 81 L.Ed.2d 601 (1984), the CIT concluded that the petitioner could not “meet the burden of showing that Congress acted arbitrarily and without a rational legislative purpose in retroactively applying the petition support requirement in the CDSOA.” N.H. Ball Bearing, 815 F.Supp.2d at 1309. The CIT found that the “reward rationale” identified by the SKF panel justified the retroactive application of the CDSOA petition support requirement, even though the analysis in SKF did not separately address retroactivity. Id. The court determined that because “Congress provided a reward mechanism that was considerably more comprehensive than the one based only on a prospective scheme,” the “retroactive reach of the petition support requirement ... is justified by a rational legislative purpose.... ” I.d.; see also id. (“It was not arbitrary or irrational for Congress to conclude that the legislative purpose of rewarding domestic producers who supported antidumping petitions ... would be more fully effectuated if the petition support requirement were applied both prospectively and retrospectively.” (internal citation omitted)).
II
A
As an initial matter, the ITC argues that the CDSOA was not retroactive legislation under the test set out in Princess Cruises, Inc. v. United States; 397 F.3d 1358 (Fed.Cir.2005). The ITC states that, under the three-factor test described in Princess Cruises, the CDSOA did not impose any new duty or disability on Schaeffler’s past actions, Schaeffler could not have had settled expectations that it would receive distributions prior to enactment of the CDSOA, and there was an insufficient degree of connection between the CDSOA and Schaeffler’s past conduct. ITC Br. at 18-21. Schaeffler, Customs, and Timken, on the other hand, all agree that the CDSOA applied retroactively.
We agree with Schaeffler, Customs, and Timken that the CDSOA applied retroactively. See Pat Huval Rest. & Oyster Bar, Inc. v. Int’l Trade Comm’n, No. 2012-1250, 785 F.3d 638, 642-43, 2015 WL 2108514, at *3-4 (Fed.Cir. May 7, 2015) (holding that the CDSOA is “retroactive in effect”). The court in Princess Cruises adopted the test for retroactivity from the Supreme Court’s opinion in Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The Landgraf court made clear, however, that when Congress “expressly prescribed the statute’s proper reach.... there is no need to resort to judicial default rules.” Id. at 290, 114 S.Ct. 1483; see also id. at 264, 114 S.Ct. 1483 (In other words, “[wjhere the congressional intent is clear, it governs.”). When a statute, on its face, applies retroactively, it is unnecessary for us to rely on the factors identified by Landgraf and Princess Cruises.
Section 1675c(d)(l) states that the ITC must forward a list of ADPs to Customs “in the case of orders or findings in effect on January 1, 1999.” SKF, 556 F.3d at 1341 n. 3. Commerce then used this list to determine the parties eligible for the initial CDSOA distributions based on their response to questionnaires predating the CDSOA. Id. Congress passed the CDSOA on October 28, 2000, thus it is clear on the face of the statute that the petition support requirement applied to conduct (i.e., responses to a questionnaire question) that occurred prior to enactment of the statute. The statute expressly has retroactive effect, so we need not rely on the Princess Cruises analysis to conclude that the CDSOA petition support requirement applies retroactively. Because this provision *1361 has retroactive effect, we must continue our analysis to determine if that retroactive effect violates the Due Process Clause of the Fifth Amendment.'
B
Schaeffler argues that the petition support requirement of the CDSOA violated the Due Process Clause by being imper-missibly retroactive. In response, Customs and Timken first question whether Schaeffler established that it had any property interest protected by the Due Process Clause. Customs Br. at 19-23. Customs and Timken contend that, to succeed on a Due Process Clause challenge, the petitioner must first demonstrate that it has a protected property interest. Customs and Timken claim that Schaeffler has only shown that it had a reliance interest in the pre-CDSOA antidumping laws remaining unchanged, or that it had a protected interest in the government not providing substantial economic assistance to its competitors — neither of which, according to Customs and Timken, is a sufficient property interest protected by the Due Process Clause. Schaeffler responds that it has a protected property interest because, when it checked the box to oppose a petition, it believed that it would not be subjecting itself to competitive harm through the aggrandizement of its compel itors. Reply Br. at 2-6.
We recently addressed a similar dispute involving a Due Process Clause challenge to the retroactive effect of an amendment to the Tariff Act of 1930 regarding non-market economies. GPX Int’l Tire Corp. v. United States, 780 F.3d 1136 (Fed.Cir.2015). In GPX, the government similarly alleged that the petitioner lacked a vested right protected by the Due Process Clause, which, it argued, precluded us from having to perform a rational basis analysis. We recognized that “the outcome of the due process analysis [does not] depend[ ] upon a determination that a vested right exists,” and that, although the “vested right analysis ... may be relevant to the due process analysis, it is not a threshold test.” Id. at 1141 (citing Weaver v. Graham, 450 U.S. 24, 29-30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (“Evaluating whether a right has vested is important for claims under the Contracts or Due Process Clauses, which solely protect pre-existing entitlements.”)). Similarly, here, although the vested rights analysis requested by the government may be “relevant to the due process analysis,” we choose not to reach that question because we find that Congress had a rational basis for the retroactive effect of the petition support requirement. See Pat Huval, 785 F.3d at 642 n. 2, 2015 WL 2108514, at *4 n. 2 (declining to address “whether the competitive injury [under the CDSOA] claimed by the appellants constitutes a deprivation of a cognizable property interest of the sort sufficient to trigger procedural due process rights”). We, thus, assume without deciding, for purposes of our analysis, that Schaeffler had a protected property interest implicating the Due Process Clause. See, e.g., Dist. Attorney’s Office for the Third Judicial Dist. v. Osborne, 557 U.S. 52, 67, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009) (assuming without deciding that the respondent “invoked the proper federal statute in bringing his claim,” because the Court’s “resolution of [respondent’s] claim does not require us to resolve this difficult issue”).
C
Schaeffler challenges the retroactive application of the petition support requirement of the CDSOA as a violation of the Due Process Clause. “It is by now well established that legislative Acts, adjusting the burdens and benefits of economic life come to the Court with a pre *1362 sumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.” Usery, 428 U.S. at 15, 96 S.Ct. 2882. Specifically, retroactive legislation is “not unlawful solely because it upsets otherwise settled expectations ... even though the effect of the legislation is to impose a new duty or liability based on past acts.” Id. at 16, 96 S.Ct. 2882.
The retrospective aspects of an Act of Congress must, however, meet the requirements of due process — the justification for the Act “must take into account the possibility that the [plaintiffs] may not have known of the danger ... and that even if they did know of the danger their conduct may have been taken in reliance upon the current state of the law.” Id. at 17, 96 S.Ct. 2882. Based on these considerations, the Supreme Court has established a test for analyzing retroactive economic legislation under the Due Process Clause — “the retroactive application of a statute” must be “supported by a legitimate legislative purpose furthered by rational means.” Gray, 467 U.S. at 729, 104 S.Ct. 2709; see also General Motors v. Romein, 503 U.S. 181, 191, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992). The burden placed on retroactive legislation “is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.” Id. at 730, 104 S.Ct. 2709.
Under this analysis, the Supreme Court has, for example, upheld a retroactive requirement that mine owners provide compensation to former employees disabled due to black lung disease “bred during employment” as a “rational measure to spread the costs of the employees’ disabilities,” Usery, 428 U.S. at 15-18, 96 S.Ct. 2882; upheld retroactive amendments to ERISA enacted to prevent employers from
withdrawing early from multiparty pension plans due to pending changes in the law that would impose larger contributions from the employer as a rational means of preventing employers from “taking advantage of the lengthy legislating process,” Gray, 467 U.S. at 729-32, 104 S.Ct. 2709; upheld a retroactive statute passed by the Michigan legislature to “correct[] the unexpected results of the Michigan Supreme Court’s ... opinion” involving payment of workers’ compensation benefits, Romein, 503 U.S. at 191, 112 S.Ct. 1105; and upheld a retroactive change to an estate tax deduction as a rational approach taken to “correct what [Congress] reasonably viewed as a mistake” in the original provision of the Tax Code granting the deduction, United States v. Carlton, 512 U.S. 26, 31-34, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994). See also Commonwealth Edison, 271 F.3d at 1344-45 (listing examples where the Supreme Court upheld retroactive legislation against a Due Process Clause challenge). And, as mentioned, we recently upheld a retroactive change to how antidumping and countervailing duties are applied to non-market economies under the Tariff Act of 1930 against a Due Process Clause challenge. GPX Int’l, 780 F.3d at 1142-44 (noting five “considerations” relevant to the rational basis analysis under the Due Process Clause).
Schaeffler thus has the burden to establish that Congress “acted in an arbitrary and irrational way” when it applied the petition support requirement of the CDSOA to conduct pre-dating the Act. Usery, 428 U.S. at 15, 96 S.Ct. 2882. Schaeffler argues that the retroactive application of the CDSOA could not support a “legitimate legislative purpose,” Gray, 467 U.S. at 729, 104 S.Ct. 2709, because rewarding speech that predated the Act would not assist the government in preventing dumping at the time of the CDSOA — the “re *1363 ward rationale” would only support prospective application of the petition support requirement because a reward can only affect conduct once the industry had notice of the effect of choosing to support or not support a petition. Appellant Br. at 24-25. Schaeffler further argues that, in SKF, the panel explained that the petition support requirement incentivized, rather than rewarded, domestic producers to support petitions. Reply Br. at 7-12. And, because an incentive can only affect parties with notice of the incentive, the retroactive effect of the CDSOA’s petition support requirement would not be justified by a rational basis. Id. In response, Customs, the ITC, and Timken all argue that the rational basis identified in SKF is sufficient to justify retroactive application of the petition support requirement, and that the SKF majority clearly explained' that the purpose of the petition support requirement was to reward support of petitions, not merely to incentivize future conduct.
Rational basis review of economic legislation under the Due Process Clause is highly deferential to Congress, and we hold that Schaeffler has failed to demonstrate that the retroactive application of the petition support requirement was not “supported by a legitimate legislative purpose furthered by rational means.” Gray, 467 U.S. at 729, 104 S.Ct. 2709; see also Pat Huval, 785 F.3d at 643-46, 2015 WL 2108514, at *4-6 (determining that “[t]he SKF court’s conclusion that the statute promoted a substantial governmental interest in a rational manner ... is nonetheless squarely applicable here”). It is true that SKF involved a prospective equal protection challenge, and the scope of the rational basis analysis under the Equal Protection Clause may not always be coextensive with the rational basis analysis under the substantive component of the Due Process Clause, especially “[w]hen a law exhibits ... a desire to harm a politically unpopular group.” See Lawrence v. Texas, 539 U.S. 558, 580-82, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) (O’Connor, J., concurring in the judgment) (noting that the government’s interest in promoting morality was considered a sufficient justification to uphold a state law criminalizing sodomy under a due process challenge in Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), but not for rational basis review under the Equal Protection Clause). For review of the petition support requirement, however, we find that the rational basis justification identified by the SKF panel in its equal protection analysis also provides a sufficient rational basis under a due process challenge. See, e.g., Armour v. City of Indianapolis, — U.S. —, 132 S.Ct. 2073, 2080, 182 L.Ed.2d 998 (2012) (citing to both due process and equal 'protection challenges in explaining the thrust of rational basis review); Zablocki v. Redhail, 434 U.S. 374, 407, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) (Relinquish J., dissenting) (same). And Schaef-fler has failed to demonstrate that a prospective analysis of the petition support requirement under rational basis review pursuant to equal protection grounds would differ from rational basis review under the substantive aspects of the Due Process Clause in this case. The only question remaining is if the rational basis identified by the SKF panel justifies retroactive application of the petition support requirement under the Due Process Clause.
Schaeffler claims that the SKF panel found the petition support requirement justified because it acted as an incentive for domestic parties to support an anti-dumping petition. But nowhere in the SKF opinion did the court state that the petition support requirement acted as an incentive — the panel bluntly stated that “the purpose of the Byrd Amendment’s *1364 limitation of eligible recipients was to reward injured parties who assisted government enforcement of the antidumping laws.... ” SKF, 556 F.3d at 1352; see also id. at 1353 (referring to its approach as the “reward justification,” and stating that “the language of the [CDSOA] is easily susceptible to a construction that rewards action....”). The panel later reiterated that the “government has a substantial interest in rewarding those who assist in the enforcement of government policy.” Id. at 1355. Although Schaeffler is correct that the panel’s comparisons to qui tarn and whistleblower actions may also potentially support an incentive justification for the CDSOA, these references, alone, do not abrogate the clear language of SKF, concluding that a “reward justification” provides the necessary rational basis to justify the petition support requirement under an equal protection challenge to the CDSOA. See Pat Huval, 785 F.3d at 645-47, 2015 WL 2108514, at *6-7 (holding the reward justification to be a valid legislative purpose). We are bound by that unequivocal holding. Deckers Corp. v. United States, 752 F.3d 949, 959 (Fed.Cir.2014) (“In this Circuit, a later panel is bound by the determinations of a prior panel, unless relieved of that obligation by an en banc order of the court or a decision of the Supreme Court.”).
Under the “reward justification” developed in SKF, we find that the retroactive application of the petition support requirement of the CDSOA is “supported by a legitimate legislative purpose furthered by rational means.” Gray, 467 U.S. at 729, 104 S.Ct. 2709. Congress could have rationally decided to reward those parties that supported antidumping orders entered both before and after Congress enacted the CDSOA. See N.H. Ball Bearing, 815 F.Supp.2d at 1309 (“It was not arbitrary or irrational for Congress to conclude that the legislative purpose of rewarding domestic producers who supported antidumping petitions ... would be more fully effectuated if the petition support requirement were applied both prospectively and retrospectively.” (internal citation omitted)). Producers that supported antidumping petitions before and after the CDSOA contributed equally to eventual antidumping orders, making it rational for Congress to have treated these two groups similarly when providing rewards. Congress could have rationally envisioned the petition support requirement as a means of granting a reward to those parties that supported antidumping petitions even before Congress enacted the CDSOA. We conclude that the retroactive application of the petition support requirement of the CDSOA is justified by a rational basis sufficient to meet the requirements of the Due Process Clause of the Fifth Amendment.
Conclusion
Because we conclude that the retroactive application of the petition support requirement of the CDSOA rationally relates to the government’s interest in rewarding members of the domestic industry that supported antidumping petitions, we affirm the CIT’s determination that the petition support requirement does not violate the Due Process Clause of the Fifth Amendment.
AFFIRMED

. We stayed Schaeffler’s appeal pending the appeal in Ashley Furniture Industries, Inc. v. United States, 734 F.3d 1306 (Fed.Cir.2013). Upon our resolution of Ashley Furniture, we lifted the stay of Schaeffler's appeal on February 20, 2014.